WELCO INDUSTRIES, INC. *v.* APPLIED COMPANIES,
APPELLEE; VICKERS, INC., APPELLANT.

[Cite as *Welco Industries, Inc. v. Applied
Cos.* (1993), 67 Ohio St.3d 344.]

(No. 92–471—Submitted May 18, 1993—Decided September 15, 1993.)

346

*Bauer, Morelli & Heyd Co., L.P.A., Arnold Morelli* and *John M. Isidor,* for appellee.

*Dinsmore & Shohl, Lawrence R. Elleman* and *Linda A. Cooper,* for appellant.

MOYER, C.J. This case presents the question whether a stranger corporation that purchases the assets of another corporation may be held liable for the unassumed contractual obligations of the predecessor under a theory of successor liability. This case specifically requires us to define the contours of the "mere continuation" exception to the general rule of successor nonliability as it applies to claims sounding in contract.

Under Civ.R. 56, summary judgment is proper when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138. Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

The well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation. *Flaugher v. Cone Automatic Machine Co.* (1987), 30 Ohio

St.3d 60, 30 OBR 165, 507 N.E.2d 331; *Cyr v. B. Offen & Co., Inc.* (C.A.1, 1974), 501 F.2d 1145; 15 Fletcher, Cyclopedia of the Law of Private Corporations (1990), Section 7122. Equally well recognized are the four exceptions to this general rule. A successor corporation may be held liable when

"(1) the buyer expressly or impliedly agrees to assume such liability;

"(2) the transaction amounts to a *de facto* consolidation or merger;

"(3) the buyer corporation is merely a continuation of the seller corporation; or

"(4) the transaction is entered into fraudulently for the purpose of escaping liability." *Flaugher, supra,* 30 Ohio St.3d at 62, 30 OBR at 167, 507 N.E.2d at 334.

The plaintiff in *Flaugher* was injured by a piece of industrial machinery. Because the corporation that made the machine no longer existed, the plaintiff sued a successor corporation that had purchased the assets of the manufacturer. We held that no liability could attach to the successor corporation absent one of the traditional exceptions to the rule of nonliability. We further held that none of the exceptions applied under the facts of the case. *Id.*

Although *Flaugher* was a products liability case, the rule and four traditional exceptions evolved in nonproducts cases involving contracts, tax liabilities, and shareholders' rights. *Flaugher, supra,* 30 Ohio St.3d at 68, 30 OBR at 172, 507 N.E.2d at 338 (A.W. Sweeney, J., dissenting); *Cyr, supra,* 501 F.2d at 1152; *Turner v. Bituminous Cas. Co.* (1976), 397 Mich. 406, 417–418, 244 N.W.2d 873, 878. In nonproducts cases, the liability of the successor has usually depended on whether the transaction was a merger (liability imposed by statute), de facto merger (liability imposed by common law), or cash-for-assets transaction (no liability). *Turner, supra,* 397 Mich. at 419–420, 244 N.W.2d at 879.

In recent years, some courts have criticized the strictness and formality of this approach in the products liability cases and have expanded the circumstances under which successor corporations may be held liable for injuries caused by products manufactured by the predecessor corporation. California, for example, has adopted the so-called "product line" theory of successor liability, under which a successor corporation that manufactures the same line of products as its predecessor may be held liable for injuries caused by products manufactured by the predecessor corporation. *Ray v. Alad Corp.* (1977), 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3. This court has expressly declined to adopt the product line theory in Ohio. *Flaugher, supra.* Another approach has been to relax the requirements of the "mere continuation" exception, with the result that even in a cash-for-assets transaction a court may impose liability on the basis of significant

shared features between the predecessor and successor corporations. *Id.,* 30 Ohio St.3d at 64, 30 OBR at 169, 507 N.E.2d at 336.

Courts have justified the product line and have expanded mere-continuation tests in products liability cases on many of the same public policy grounds that justify strict products liability in tort. Manufacturers, for example, are in a better position than consumers to bear and spread the costs of the injuries their products cause, and they are in a unique position to improve their products. *Flaugher, supra,* 30 Ohio St.3d at 66, 30 OBR at 170–171, 507 N.E.2d at 337; *Cyr, supra,* 501 F.2d at 1154. Another factor is the benefit the acquiring corporation derives from the accumulated goodwill of the seller corporation. *Cyr, supra,* at 1154. These policy considerations have led some courts to conclude that in some cases the consequences of a sale of assets should be no different from a de facto merger for the purposes of tort liability. *Turner, supra.*

' This court in *Flaugher* declined to adopt the product line theory because such an expansion of liability should come from the General Assembly. This court was unwilling to run the risk of imposing a "potentially devastating burden on business transfers and * * * convert[ing] sales of corporate assets into traps for the unwary." 30 Ohio St.3d at 66, 30 OBR at 171, 507 N.E.2d at 337.

When the Supreme Court of Michigan in *Turner* expanded the mere-continuation theory, it stressed that "[t]his is a products liability case first and foremost." 397 Mich. at 416, 244 N.W.2d at 877. The court concluded that in the context of products liability, it did not promote justice to treat a transfer of assets for cash differently from a merger or de facto merger when the needs and interests of the injured party and corporation are identical in each case. *Id.* at 429–430, 244 N.W.2d at 883.

However valid the justifications for expanding the liability of successor corporations in products liability cases, those justifications do not apply here. Unlike tort law, which is guided largely by public policy considerations, contract law looks primarily to the intentions of the contracting parties. See *Victorson v. Bock Laundry Machine Co.* (1975), 37 N.Y.2d 395, 401, 373 N.Y.S.2d 39, 41, 335 N.E.2d 275, 277. The concerns for predictability and free transferability in corporate acquisitions that led this court to decline to expand the test for tort successor liability in *Flaugher* are even more compelling where the claim is in contract. To expand the mere-continuation exception to a contractual claim would virtually negate the difference between an asset purchase and a stock purchase. Courts would be forced to look beyond the surface of any asset purchase to determine the extent of shared features between predecessor and successor in order to decide whether liability should attach to contractual obligations that were explicitly excluded from the transaction. The sale of a corporation's assets is an important tool in raising liquid capital to pay off

corporate debts. A court-imposed expansion of contractual liability of successor corporations beyond the traditional exceptions would unnecessarily chill the marketplace of corporate acquisitions. For these reasons, we decline to expand the traditional exceptions to the general rule of nonliability of successor corporations, and hold that a corporation that purchases the assets of another corporation is not liable for the contractual liabilities of its predecessor corporation unless (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability. *Flaugher v. Cone Automatic Machine Co.,* 30 Ohio St.3d at 62, 30 OBR at 167, 507 N.E.2d at 334.

We next apply the rule of law to the facts of this case. It is clear that Vickers did not expressly or impliedly assume any contractual liability to Applied. The purchase agreement expressly disclaimed both Welco's rights in its claim against Applied and its liability in the counterclaim.

Nor is there any indication that the parties entered the transactions with fraudulent intent to escape liability. Indicia of fraud include inadequate consideration and lack of good faith. *Turner, supra,* 397 Mich. at 437, 244 N.W.2d at 887 (Coleman, J., dissenting). Applied does not contend that it is entitled to relief under this theory. Nor does the record support a claim that the approximately $8,300,000 paid for Welco's assets was inadequate. Applied never attempted to rebut Vickers's affidavit in support of summary judgment, which asserted that the purchase price was fair and the result of arm's-length negotiations.

The de facto merger theory is also unavailing. A de facto merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor. *Flaugher, supra,* 30 Ohio St.3d at 71, 30 OBR at 175, 507 N.E.2d at 340 (A.W. Sweeney, J., dissenting). A de facto merger is a merger in fact without an official declaration of such. The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations. *Turner, supra,* 397 Mich. at 420, 244 N.W.2d at 879. One court has indicated that a transfer of assets for stock is the sine qua non of de facto merger. *Travis v. Harris Corp.* (C.A.7, 1977), 565 F.2d 443, 447. The transaction in the case *sub judice* involved not a sale of assets for stock but, rather, assets for cash. Nor did the selling corporation dissolve immediately. In fact, it still exists under the

name Wesche Electric. It is subject to a noncompetition agreement with Vickers, which indicates that it may again become active. Thus, this transaction fails to satisfy the elements of a de facto merger.

Applied's primary argument is that Vickers is liable as a mere continuation of Welco. Having declined to adopt the expanded mere-continuation theory, we must decide whether Applied may recover under the traditional mere-continuation theory. We have held that the basis of this theory is the continuation of the corporate entity, not the business operation, after the transaction. *Flaugher, supra.* Such would be the case when "one corporation sells its assets to another corporation with the same people owning both corporations. Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation. This is actually a reorganization." *Turner, supra,* 397 Mich. at 449, 244 N.W.2d at 892. This type of transaction is executed to escape liabilities of the predecessor corporation. *Cyr, supra,* 501 F.2d at 1151, 1153. Because the goal is to escape liability, inadequacy of consideration is one of the indicia of mere continuation. *Jackson v. Diamond T. Trucking Co.* (1968), 100 N.J.Super. 186, 196, 241 A.2d 471, 477.

Applied argues, and the court of appeals held, that there exist several issues of material fact through which Vickers might be liable as a mere continuation of Welco. These asserted indicia of mere continuation include Vickers–Welco having the same physical plant, officers, employees and product line as Welco had. As we have stated, these facts are relevant only to the *expanded* mere-continuation and product line theories of successor liability. It is not in dispute that Vickers and Welco were strangers and that the owners of Vickers are not the owners of Welco. If Wesche has been drained of assets to avoid liability, Applied's remedy lies against Wesche or its parent corporation, E.A.C. The facts not in dispute thus demonstrate that Vickers is not liable for the contractual liabilities of Welco under any of the traditional exceptions to the rule of nonliability of corporate successors. Summary judgment was thus appropriate and the court of appeals erred in reversing the trial court's grant thereof.

The judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

WRIGHT, BROGAN, F.E. SWEENEY and PFEIFER, JJ., concur.

A.W. SWEENEY and DOUGLAS, JJ., dissent.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for RESNICK, J.

A. WILLIAM SWEENEY, J., dissenting. While I concur in the conclusion of the majority that the traditional exceptions to successor corporate liability are

applicable to actions for breach of contract, I nevertheless find persuasive the argument that the third exception to nonliability should embrace what has been referred to as the expanded continuity-of-enterprise doctrine. I do so largely for the reasons stated in the majority opinion in *Flaugher v. Cone Automatic Machine Co.* (1987), 30 Ohio St.3d 60, 30 OBR 165, 507 N.E.2d 331. In *Flaugher* the majority set forth the features which distinguish the mere-continuation theory from the expanded continuity-of-enterprise theory:

" 'The gravamen of the traditional "mere continuation" exception is the continuation of the *corporate entity* rather than continuation of the business operation.' (Emphasis *sic.*) 1 Frumer & Friedman, *supra,* at 70.58(12), Section 5.06[2][c]. The exception has been narrowly construed to protect corporations from unassumed liabilities. *Id.* at 70.58(13), Section 5.06[3]. *Those courts which have expanded this exception have done so on the basis of significant shared features between the buyer and the seller, such as the same employees, a common name, or the same management.* See, *e.g., Cry v. B. Offen & Co.* (C.A. 1, 1974), 501 F.2d 1145, 1153–1154 (same employees continued after transfer of ownership to produce same product, in same plant, with same supervision); *Turner v. Bituminous Cas. Co.* (1976), 397 Mich. 406, 244 N.W.2d 873 (retention of key personnel and trade name). *The reasoning behind this expanded view of continuity is that where the successor corporation shares significant features with its predecessor, no basis exists for treating a purchase of assets differently from a de facto merger.* *Id.* at 423, 244 N.W.2d at 880. The cases have required that the predecessor be dissolved or liquidated soon after the transfer of assets. *Id.* at 419–420, 244 N.W.2d at 878–879; *Bonee v. L & M Constr. Chemicals* (M.D.Tenn. 1981), 518 F.Supp. 375, 381." (Emphasis added.) *Id.* at 64–65, 30 OBR at 169, 507 N.E.2d at 336.

I agree with the rationale that the sharing of significant features between successor and predecessor corporations eliminates any basis "for treating a purchase of assets differently from a *de facto* merger." However, I would part company with those decisions which require the dissolution of the predecessor as a condition precedent to the application of the expanded continuity-of-enterprise doctrine. My disagreement with this requirement is based on the view that it invites the avoidance of liability based on the mere expedient of maintaining a shell corporation in the place of the predecessor enterprise. Liability should not be dependent upon such a facile maneuver.

Instead, I would measure whether the successor corporation was a continuation of its predecessor based upon the following factors:

1. Continuity of management, personnel, physical location and assets;

2. Assumption of the ordinary business obligations and liabilities by the successor; and

3. The successor's presentation of itself as the continuation of the predecessor.

These factors cannot be resolved by summary judgment based upon the state of the record below. Genuine issues of material fact exist as to whether the factors are present in this case. I would therefore affirm the court of appeals and remand the cause for a trial on the merits.

My embrace of the expanded continuity-of-enterprise exception is limited to those actions involving issues of corporate, contract and tax law. I continue to adhere to the product line theory as the appropriate rule of law to be applied in the context of products liability. See *Flaugher, supra,* 30 Ohio St.3d at 68, 30 OBR at 172, 507 N.E.2d at 338, A.W. Sweeney, J., dissenting; *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 67, 609 N.E.2d 144, 146, A.W. Sweeney, J., concurring.

DOUGLAS, J., concurs in the foregoing dissenting opinion.