86 F.3d 1155
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joanna BERNY, a minor, by and through her parents, Janet and
Charles Berny; Janet Berny, Charles Berny,
Plaintiffs-Appellants,
v.
The C.S. BELL CO., Independently and as successor in
interest to the C.S. Bell Company; Emerson Electric
Company, Independently and as successor in interest to the
C.S. Bell Company, Defendants-Appellees.
 No. 95-3200.
 United States Court of Appeals, Sixth Circuit.
 May 29, 1996.
 
 Before: MERRITT, Chief Circuit Judge, LIVELY and RYAN, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 The plaintiffs in this products liability case appeal from summary judgment in favor of the defendants. Jurisdiction is based on diversity of citizenship. We review the decision of the district court de novo, applying Ohio law. The only question is whether the district court correctly held that neither of the defendants is liable as a successor in interest to the manufacturer of a heavy bell that fell from its mooring and struck the plaintiff Joanna Berny. The accident occurred in 1988 when Joanna was four and one-half years old. The bell was manufactured by the C.S. Bell Company of Hillsboro, Ohio apparently sometime before 1968. We agree with the district court that neither of the defendants is liable for the alleged defective condition of the bell. Accordingly, we affirm the judgment of the district court.
 
 I.
 
 2
 Joanna's parents filed this action on behalf of their daughter in the Northern District of Ohio in October 1993. (An earlier action that they filed in Texas, where the injury occurred, was dismissed without prejudice in 1992.) The defendants named in the present action are the C.S. Bell Co. of Tiffin, Ohio and Emerson Electric Co., a Missouri corporation. The complaint alleged that both defendants were corporate successors in interest to the manufacturer of the bell and that the bell was defective.
 
 
 3
 We will attempt to trace the various transactions that ultimately resulted in the Bernys' lawsuit against the two defendants, C.S. Bell Co. of Tiffin, Ohio and Emerson Electric Co.
 
 
 4
 The original C.S. Bell Company was founded by Charles S. Bell in 1858 as a sole proprietorship, and was incorporated in 1894, using the name the "C.S. Bell Company." Ownership of the original C.S. Bell Company remained in the Bell family until 1968, when the family sold the assets of the original C.S. Bell Company to Charles Limes and Robert Hudson. The two individuals incorporated the new undertaking in the name of the "C.S. Bell Co.," and continued to operate out of the Hillsboro, Ohio plant. Also in 1968, the board of directors of the original C.S. Bell Company formally consented to the C.S. Bell Co.'s use of a name similar to that of the original C.S. Bell Company. The new C.S. Bell Co. continued to manufacture a line of products similar to the products made by the original C.S. Bell Company. The record does not establish when the original C.S. Bell Company ceased to exist.
 
 
 5
 In 1969, the two individuals transferred all of the stock of the C.S. Bell Co. to the Belquin Company, a wholly owned subsidiary of Quincy Foundry, Inc. From 1969 until 1974, the C.S. Bell Co., as a subsidiary of Belquin, continued to manufacture a line of products similar to the original C.S. Bell Company and continued to use the C.S. Bell Co. name. By 1974, Quincy Foundry was doing a considerable amount of business with Emerson Electric Company and decided to update and expand its foundry operations. As a result, two transactions occurred: Belquin sold off the assets of its subsidiary, the C.S. Bell Co., and Quincy Foundry entered into an asset for stock reorganization, through which the owners of Quincy Foundry transferred all of Quincy Foundry's assets to Emerson (except $25,000 retained to pay expenses) in exchange for 30,000 shares of Emerson voting stock and the assumption of Quincy Foundry's liabilities.
 
 
 6
 The first transaction occurred on January 22, 1974, when Roto Seal, an Ohio corporation, acquired all of the manufacturing assets of the Belquin subsidiary in an asset for cash transfer. Pursuant to the purchase agreement, Roto Seal acquired the C.S. Bell Co. trade name and all of the associated manufacturing assets and assumed liability on two contractual obligations of the C.S. Bell Co. It assumed no tort liabilities. Subsequently, Roto Seal changed its name to the C.S. Bell Co. This entity, a defendant in this case, continued manufacturing a similar line of products, but moved the operation from Hillsboro, Ohio to Tiffin, Ohio.
 
 
 7
 The second transaction mentioned above took place the next day, January 23, 1974, when Emerson entered into a plan of reorganization with Quincy Foundry. Shortly after the Emerson-Quincy Foundry reorganization, Emerson changed the name of the Belquin subsidiary, whose assets had been sold to Roto Seal, from the C.S. Bell Co. to Bell's Foundry, Inc. Using the name Bell's Foundry, the company continued to operate until 1978, when Bell's Foundry was dissolved. On the date of Quincy's transaction with Emerson, Quincy owned none of Belquin's or the Hillsboro C.S. Bell Co.'s assets. Rather, at that time the defendant C.S. Bell Co. (formerly Roto Seal) of Tiffin, Ohio owned these assets, having acquired them for cash from Belquin.
 
 II.
 
 8
 In Flaugher v. Cone Automatic Machine Co., 30 Ohio St.3d 60 (1987), the Supreme Court of Ohio defined the conditions under which a corporation that purchases the assets of a manufacturer may be held liable for injuries caused by a defective product of the manufacturer. Syllabus One states:
 
 
 9
 1. A corporation which purchases the assets of a manufacturer is not liable for injury resulting from a defective machine produced by that manufacturer unless there is an express or implied assumption of such liability, or the transaction constituting the sale of assets amounts to a de facto merger or consolidation, or the purchaser corporation is a mere continuation of the seller corporation, or the transaction is a fraudulent attempt to escape liability.
 
 
 10
 Id.
 
 
 11
 Expanding on the syllabus, the court stated:
 
 
 12
 The general rule in products liability is that a successor corporation's amenability to suit will depend on the nature of the transaction which gave rise to the change in ownership. Where the transfer is accomplished by means of a statutory merger or consolidation, the liability of the former corporation will be assumed by the new entity. Where there is merely a sale of a corporation's assets, the buyer corporation is not liable for the seller corporation's tortious conduct unless one of the following four exceptions applies:
 
 
 13
 (1) the buyer expressly or impliedly agrees to assume such liability;
 
 
 14
 (2) the transaction amounts to a de facto consolidation or merger;
 
 
 15
 (3) the buyer corporation is merely a continuation of the seller corporation; or
 
 
 16
 (4) the transaction is entered into fraudulently for the purpose of escaping liability.
 
 
 17
 Id. at 62 (citations omitted).
 
 III.
 A.
 
 18
 In the instant appeal, the transactions under scrutiny are the January 22, 1974 sale of assets of the C.S. Bell Co. of Hillsboro, Ohio to Roto Seal, now the C.S. Bell Co. of Tiffin, Ohio, and the January 23, 1974 Quincy reorganization with Emerson. The parties agree that neither transfer constituted a statutory merger or consolidation; therefore, the Bernys were required to establish a material issue of fact related to at least one of the exceptions to the general rule against successor liability in order to survive summary judgment.
 
 B.
 
 19
 We consider first the plaintiffs' arguments in support of their claim against the C.S. Bell Co. A careful review of the record in the present case conclusively establishes that Roto Seal, now the defendant C.S. Bell Co., purchased the assets of the Quincy's subsidiary, Belquin, and that none of the four exceptions to non-liability listed in Flaugher applies to this transaction.
 
 
 20
 The plaintiffs argue that there are ambiguities in the sale and purchase documents that raise questions as to whether the C.S. Bell Co. of Tiffin, Ohio intended to assume tort liability for products of the manufacturer. There is no express assumption of such liability and we find no such ambiguities to support a claim of implied assumption.
 
 
 21
 The Bernys also argue that the second exception to the general rule protecting acquiring corporations from successor liability, the de facto merger exception, applies. The Bernys attempt to raise this issue for the first time on appeal; however, they have not shown "exceptional circumstances" to explain why they should be permitted to raise the issue on appeal. Foster v. Barilow, 6 F.3d 405, 407 (6th Cir.1993). Even if we were to consider the issue, it is clear that the de facto merger exception, as defined by the Ohio Supreme Court, does not apply. See Welco Industries, Inc. v. Applied Companies, 67 Ohio St.3d 344 (1993).
 
 
 22
 Finally, as concerns the claim against the C.S. Bell Co., the plaintiffs argue that the transaction by which C.S. Bell Co. purchased the bell-manufacturing assets falls within the "mere continuation" exception. However, as the Flaugher court noted "[t]he gravamen of the traditional 'mere continuation' exception is the continuation of the corporate entity rather than the continuation of the business operation." Flaugher, 30 Ohio St.3d at 64 (original emphasis). In addition, this exception must be "narrowly construed" in order to protect acquiring corporations from unassumed liabilities. Id. The Flaugher court considered and specifically rejected an expanded version of the mere continuation exception adopted by the Supreme Court of California in Ray v. Alad Corp., 19 Cal.3d 22 (1977). Upon examining the transactions in question under the traditional mere continuation theory, we are convinced that the exception does not apply.
 
 C.
 
 23
 We find even less support in the record for the plaintiffs' claim against Emerson. As noted, when Quincy Foundry transferred its assets to Emerson, it had already disposed of all of its bell-manufacturing assets to Roto Seal, which then became the Tiffin, Ohio defendant C.S. Bell Co. As the district court found, Emerson did not buy the assets of the C.S. Bell Co. Furthermore, the Quincy-Emerson transaction documents stated that Emerson did not expressly or impliedly assume any liabilities of the C.S. Bell Co. While Emerson agreed to assume certain liabilities of Quincy, it did not agree to assume any liabilities of Quincy's subsidiaries. The Hillsboro, Ohio C.S. Bell Co. was a wholly owned subsidiary of Belquin, itself a wholly owned subsidiary of Quincy.
 
 
 24
 The plaintiffs submitted absolutely no evidence from which it could be concluded that these corporations' separate identities should be disregarded. Under Ohio law, a corporate parent and its subsidiary are separate and distinct legal entities. Mutual Holding Co. v. Limbach, 71 Ohio St.3d 59, 60 (1994). Under Ohio law Emerson is not liable under any theory for Joanna's injuries.
 
 
 25
 The district court correctly held that the plaintiffs failed to raise a genuine issue of material fact in response to the defendants' motions for summary judgment. Thus, we AFFIRM the judgment of the district court for the reasons stated herein and more fully set forth in Senior Judge John W. Potter's Memorandum and Order entered January 18, 1995.