Defendant-appellant Barbara Kinman appeals the distribution of assets and liabilities in her divorce from plaintiff-appellee, D. Douglas Kinman. On appeal, Barbara Kinman raises one assignment of error. Specifically, she contests the court's approval of a magistrate's determination that Reality Software System, Inc. ("Reality") was a "joint marital entity." We affirm.
The parties were married on November 27, 1994, and had two children. A property hearing was conducted, and on February 5, 1998, a magistrate's decision with findings of fact and conclusions of law was placed of record. Pertinent to our review, the magistrate ordered the following:
 Reality Software shall be considered a joint marital entity and both parties shall be responsible for any outstanding debts owed by this entity and shall be entitled to one half of the value of any of the assets of this entity, that existed as of the termination of the parties [sic] marriage, as of February 19, 1996, including but not limited to: software, hardware, accounts receivable, office equipment, etc.
The magistrate further ordered that Barbara Kinman should retain, free and clear of any claim of Douglas Kinman, Maxem, a sole proprietorship, and that Douglas Kinman should retain, free and clear of any claim of Barbara Kinman, Oasis Computer Corporation. Finally, the magistrate concluded that Douglas Kinman had not engaged in the sort of economic misconduct that would support an inequitable division of the marital property. Both parties filed objections to the magistrate's decision. On May 11, 1998, the domestic relations court reviewed the magistrate's decision and affirmed that part of the magistrate's order contested here. On June 22, 1998, the final divorce decree was journalized. Barbara Kinman thereafter timely filed her appeal.
In either 1983 or 1984, Douglas Kinman and several other investors founded Reality, a company that developed software and provided computer support to its customers. After Douglas and Barbara Kinman were married in 1984, Barbara Kinman began working at Reality. In 1987, the couple bought out the other investors and continued to run Reality together. Douglas Kinman was primarily responsible for handling sales, purchasing hardware, and offering computer support, while Barbara Kinman's primary responsibilities included accounting, taxes, developing software, and offering customer support.
In 1992, Reality failed to properly pay its taxes to the Internal Revenue Service ("IRS"). As a result, both parties signed an "offer in compromise," promising to pay the IRS $10,500 in return for the IRS dropping its claim against Reality. The "offer in compromise" was subsequently amended to increase Reality's tax liability payment to $20,500, but only Douglas Kinman signed the revised "offer in compromise." It appears that the IRS ultimately accepted the revised "offer in compromise." During this time, the parties formed a second company, Maxem Software Systems, Inc., as a preventative measure to protect Reality's software from the IRS. Both parties agreed that Maxem Software Systems, Inc., was never fully utilized, because the IRS accepted the "offer in compromise" and there was no need to "protect" their software.
In 1994, Barbara Kinman began running a company called Maxem, which she maintained was a sole proprietorship and unrelated to Maxem Software Systems, Inc. According to Barbara Kinman, Maxem the sole proprietorship loaned money to Reality. Douglas Kinman, however, contended that both Maxems were the same company. After allegedly starting Maxem as a sole proprietorship, Barbara Kinman continued to work at Reality, filing taxes, taking care of the bookkeeping, and offering customer support. She further testified that, in the beginning of 1996, she worked predominately at Maxem, but that she continued some of her tasks for Reality.
The parties stipulated that they separated on February 19, 1996. On May 20, 1996, Douglas Kinman sent a letter to Barbara Kinman terminating her employment with Reality, and, thereafter, she did not return to work at Reality. In October 1996, Douglas Kinman closed Reality and opened a new corporation, Oasis Computer Corporation.
At the property hearing, Douglas Kinman provided a list of Reality's current assets, and Barbara Kinman generally agreed to the status of those assets. At the hearing, Douglas Kinman also provided a "rough" list of Reality's remaining liabilities, including its debt to the IRS as of the date of the hearing in 1997. He stated that the list was only a rough estimate because additional interest and penalties would continue to accrue until the balance of the tax liabilities had been paid. Specifically, Douglas Kinman's list of liabilities included the following: (1) Ohio sales taxes due between March 1988 and September 1996; (2) IRS taxes due between January 1, 1995, and September 30, 1996; (3) IRS taxes due through December 31, 1994; (4) Ohio Bureau of Employment Services unpaid assessments from October 1988 through February 1996; (5) Bureau of Worker's Compensation miscellaneous billing dated June 26, 1996; (6) Lockland city taxes for 1994 and 1995; (7) vendors' invoices; (8) promissory notes; and (9) legal fees for 1997 and prior years. Douglas Kinman estimated the total amount of liabilities to be $159,601.46.
Barbara Kinman now contends that she should not have been held responsible for any part of Reality's debts, because the amount of debts was unknown and because Douglas Kinman had control over Reality and made all of the business decisions. She also argues that Oasis should have been held responsible for Reality's debts under the "mere continuation" doctrine. However, after reviewing the record, we cannot conclude that the court abused its discretion when it allocated responsibility for the liabilities.
Initially, we note that Barbara Kinman's reliance on a mere-continuation theory is misplaced. Under the traditional rules of corporate liability, a successor corporation is not liable for the unassumed debts and obligations of a predecessor corporation, unless one of four exceptions applies.[1] Policy considerations behind this rule and its exceptions include the need both to protect corporate creditors and to respect separate corporate identities.[2] In Ohio, the mere-continuation exception has been applied in product-liability and breach-of-contract cases.[3] Barbara Kinman argues that the exception should also apply to the division of corporate property in a domestic relations case. However, based on the stated policy reasons behind the rule and the way in which the exception has traditionally been applied in Ohio, we are unwilling, as a matter of law, to extend a theory of mere continuation to a domestic relations case such as this, because Barbara Kinman has never been considered a creditor of Reality, and because her claim relates only to the equitable distribution of property, an issue that is governed by statute.
We now turn to the distribution of the Kinmans' property under the applicable statutes. The division of marital property is governed by R.C. 3105.171(C)(1), which states in relevant part that marital property shall be divided equally unless such division would be inequitable. R.C. 3150.171(F) lists the factors that a court must consider in making its decision. A domestic relations court has broad discretion in divorce actions to divide marital property, and a reviewing court should not disturb that decision absent an abuse of discretion.[4] Abuse of discretion is more than an error in judgment; it means that the court's attitude was unreasonable, arbitrary, or unconscionable.[5]
Here, the magistrate made specific findings of fact and conclusions of law concerning Reality, which were then adopted by the court. While we recognize that there was conflicting testimony regarding who was in charge of paying the bills for Reality, we note that the weight of the evidence and the credibility of the witnesses were primarily matters within the province of the trial court.[6] The record reflects that Barbara Kinman was an active participant in Reality's business operations, that many of the debts incurred by Reality were tax-related, and that, when the debts became due prior to the separation, Barbara Kinman was working at Reality, preparing the taxes and balancing the books. Additionally, the mere fact that Reality's liabilities were not precisely calculated does not alone warrant the conclusion that the division of marital property was inequitable. In this case, it is clear that Barbara Kinman isonly responsible for the payment of those outstanding debts that existed as of the date of separation. Barbara Kinman, therefore, is only being held liable for those debts incurred while she was working at Reality. Also, we note that the record contains a "rough" list of Reality's liabilities, which identifies when the debts became due. Therefore, the parties have the appropriate means for adjusting their payments for the outstanding debts that existed as of February 19, 1996, pursuant to the trial court's order.
In light of the evidence before the domestic relations court and the reasons given for its decision, we hold that the court did not abuse its discretion in determining that Reality was a joint marital entity and in ordering that the parties share responsibility for any outstanding debts that existed as of February 19, 1996. Accordingly, Barbara Kinman's sole assignment of error is overruled, and the judgment of the domestic relations court is affirmed.
Judgment affirmed.
Painter, P.J., Sundermann andWinkler, JJ.
 Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] See Flaugher v. Cone Automatic Machine Co. (1987), 30 Ohio St.3d 60,507 N.E.2d 331.
[2] See Welco Indus. Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,349, 617 N.E.2d 1129, 1133; Flaugher, supra; 15 Fletcher, Cyclopedia of the Law of Private Corporations (1990), Section 7122.
[3] See Welco, supra; Flaugher, supra; Kuempel Service, Inc. v.Zofko (1996), Hamilton App. No. C-950003, unreported.
[4] See Middendorf v. Middendorf (1998), 82 Ohio St.3d 397,401, 696 N.E.2d 575, 578; Cherry v. Cherry (1981), 66 Ohio St.2d 348,355, 421 N.E.2d 1292, 1299.
[5] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1142.
[6] See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.