[Cite as *State ex rel. Aero Pallets, Inc. v. Bur. of Workers' Comp.*, 2023-Ohio-1384.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Aero Pallets, Inc., | : | |
| Relator, | : | No. 19AP-829 |
| v. | : | (REGULAR CALENDAR) |
| State of Ohio Bureau of Workers' Compensation et al., | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on April 27, 2023

**On brief:** *McNamara Demczyk Co., LPA*, and *Sidney N. Freeman*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *John R. Smart*, for respondent Ohio Bureau of Workers' Compensation.

IN MANDAMUS

MENTEL, J.

{¶ 1} Relator, Aero Pallets, Inc. ("Aero Pallets"), brought this original action seeking a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to vacate its final order affirming the transfer of the outstanding workman's compensation liability of Slats & Nails Pallets, Inc. ("Slats & Nails"), to Aero Pallets under Ohio Adm.Code 4123-17-02. BWC effected the transfer of Slats & Nails' "rights and obligations" to Aero Pallets under Ohio Adm.Code 4123-17-02(C) after determining that it was "essentially the same employer" as Slats & Nails under Ohio Adm.Code 4123-17-13(D). Aero Pallets seeks a writ ordering BWC to vacate its orders and adopt a finding that the two corporate entities are unrelated, as stated in its August 23, 2017 protest letter. (Dec. 10, 2019 Compl. at 8.)

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate recommends that we deny the request for a writ of mandamus. He concluded that BWC did not abuse its discretion because "ample evidence in the * * * record" supported the agency's determination that the transfer was voluntary. (Aug. 26, 2021 Mag.'s Decision at 10.)

{¶ 3} Aero Pallets filed the following objection to the magistrate's recommendation:

> The magistrate erred, to the prejudice of Relator, by finding and concluding that Aero Pallets 'wholly succeeded' Slats & Nails Pallets, Inc. * * * either for the purpose of assuming Slats & Nails' outstanding obligation to the Respondent, * * * or [as a basis for determining] Aero Pallets' experience rating.

(Sept. 9, 2021 Obj. at 1-2.)

{¶ 4} In support of the objection, Aero Pallets asserts that it "neither expressly [nor] impliedly agreed to assume Slats & Nails' obligations," and describes the arrangements between the entities and their respective owners as "straightforward, arms-length transactions, customary between business persons." *Id.* at 3. In support of its position, Aero Pallets cites three cases of the Supreme Court of Ohio.

{¶ 5} In the first, *State ex rel. K&D Group, Inc. v. Buehrer*, 135 Ohio St.3d 257, 2013-Ohio-734, the court held that BWC had abused its discretion when it transferred part of one property management company's "experience rating," used to determine the rate of workman's compensation employment premium under R.C. 4132.32(C), to another entity after BWC had determined that the newer entity was a successor in interest. *Id.* at ¶ 17. The court held that BWC had abused its discretion because there was "no evidence" that the older entity had "voluntarily transferred the business of managing the apartment complex" to the newer entity. *Id.* at ¶ 16. BWC had cited the fact that the newer entity had "hired some former employees" of the older entity, "assumed management of the leases that the prior apartment-complex owner had with its tenants," and shared the same classification number under BWC's categorization of business types. *Id.* According to the Supreme Court, "these facts [were] not sufficient" to show a voluntary transfer of business operations, particularly where the new entity had "contracted with the new owner," a third party, "to assume management of the existing apartment complex." *Id.*

**{¶ 6}** *K&D Group, Inc.* is instructive because it applies the proper standard of review to BWC's order, which must be upheld as long as some evidence in the record supports it. *State ex rel. Ugicom Ents. v. Morrison*, 10th Dist. No. 17AP-895, 2021-Ohio-1269, ¶ 5; *State ex rel. G&S Metal Prods. Co. v. Ryan*, 10th Dist. No. 09AP-387, 2010-Ohio-3835, ¶ 49 (stating that a BWC "finding" that "is supported by some evidence ends the inquiry"). Because there was "no evidence" to support BWC's finding, *K&D Group, Inc.* held that the agency had abused its discretion. *K&D Group, Inc.* at ¶ 16. Here, in contrast, the magistrate cited a plethora of evidence supporting the BWC determination, including: "a functional transfer of use for all equipment and real estate assets," the "wholesale transfer of labor," and the "significant balance due" incurred by the Slats & Nails, which had "almost entirely disregarded its obligation to provide workers' compensation coverage to its employees." (Mag.'s Decision at 9.) Aero Pallets does not address the operative standard of review and instead offers an alternative interpretation of the evidence, one that BWC rejected. However, as the magistrate explained, BWC "was not obligated to prefer this version of events when assessing whether the transfer was a voluntary assumption of the previous employer's business operation." *Id.* at 10.

**{¶ 7}** In addition, the *K&D Group, Inc.* employer complained only about the unemployment premium rate BWC had decided upon. In that case, the prior employer did not accrue over half a million dollars in liability to BWC before the transfer, as Slats & Nails did before it shuttered. This fact casts a significant shadow over the transactions between Slats & Nails and Aero Pallets, notwithstanding relator's attempt to characterize them as "perfectly legal and common business practices * * * to manage risk, financial and retirement planning." (Obj. at 5.)

**{¶ 8}** Second, Aero Pallets cites a plurality opinion of the Supreme Court, *State ex rel. Daily Servs., L.L.C. v. Morrison*, 154 Ohio St.3d 498, 2018-Ohio-2151, in support of the objection. However, a plurality opinion of the Supreme Court "is of limited precedential effect." *State v. Banks*, 10th Dist. No. 11AP-69, 2011-Ohio-4252, ¶ 7. A syllabus receiving four votes is "the only law emanating from" a plurality opinion. *Hedrick v. Motorists Mut. Ins. Co.*, 22 Ohio St.3d 42, 44 (1986), *overruled on other grounds* by *Martin v. Midwestern Group Ins. Co.*, 70 Ohio St.3d 478 (1994), as stated in *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, ¶ 89. *Morrison* contains no syllabus law.

Furthermore, *Morrison* interpreted a version of Ohio Adm.Code 4123-17-02(C) in effect before 2010 that had been superseded by the date of the opinion's release. *See Morrison* at ¶ 16 (discussing "former" version of the rule.) Accordingly, *Morrison* provides little guidance for the case at hand.

{¶ 9} Finally, Aero Pallets argues that the magistrate erred by failing to discuss the common law definition of successor-in-interest applied in *State ex rel. Crosset Co. v. Conrad*, 87 Ohio St.3d 467 (2000). In that case, the "issue presented" was "whether a corporation that purchases the foreclosed assets of another corporation through an intermediary bank may be held liable for the outstanding workers' compensation claims costs incurred during the predecessor's participation in a retrospective-rating plan." *Id.* at 471. BWC had attempted to hold the purchaser liable for the previous entity's "retrospective-rating claims costs" after finding that it had "wholly succeeded" the previous entity. *Id.* at 469-70. The Supreme Court reviewed BWC's finding under R.C. 4123.32(B), which states: "if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, * * * the employer's account and shall continue the payment of all contributions due."[1] (Emphasis deleted.) *Id.* at 470-71. *Crosset* held that the purchaser could not be held liable because the language of the statute contemplated only "a voluntary act of the employer and not the involuntary transfer of the employer's business through an intermediary bank." *Id.* at 471. Because the statute was "inapplicable" and the purchaser was "not a 'successor in interest,' " the court "turn[ed] to common-law principles of successor liability to determine [the] obligations" of the purchaser. *Id.* at 475. After applying the definition of successor liability stated in *Welco Industries, Inc. v. Applied Companies*, 67 Ohio St.3d 344 (1993), the court concluded that the purchaser was "not liable for the retrospective-rating claims costs" of the prior entity under the common law either. *Id.*

{¶ 10} Contrary to Aero Pallets' assertion, the facts of this case are not "materially identical" to *Crosset*. (Obj. at 8.) That case hinged upon the involuntary nature of the transfer, which occurred after the original entity's "assets had been seized by" two banks

---

[1] When *Crosset* was decided, this provision was numbered as R.C. 4123.32(D), but has since been renumbered and now appears in subsection (B). 2013 Am.Sub.H.B. No. 493.

before being sold to the purchaser. *Crosset* at 471. These third-party actions demonstrated that the employer did not "transfer[] a business in whole or in part" to the purchasing entity under R.C. 4123.32(D). *Id.* at 473. Thus, neither the statute nor BWC's implementing regulations applied. *Id.* at 475. Aero Pallets has not explained why it was error to apply the statute or regulations in this case, where some evidence supports the BWC's finding that Aero Pallets is the successor to Slats & Nails.

{¶ 11} Furthermore, as Aero Pallets acknowledges, the common law test of *Welco Industries, Inc.* applied in *Crosset* "is the same test" stated in Ohio Adm.Code 4123-17-02(B) and (C)(2). (Obj. at 8.) *Compare Welco Industries, Inc.*, syllabus ("A corporation that purchases the assets of another is not liable for the contractual liabilities of its predecessor corporation unless (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability") *with* Ohio Adm.Code 4123-17-02(C)(2). Because the common law test Aero Pallets argues for applying has been codified in an administrative regulation, we see no error in the magistrate's decision not to apply it. The crucial issue, nowhere discussed in Aero Pallets' objection, is the quantum of evidence that supports the conclusion of BWC, as explained by the magistrate, that Aero Pallets wholly succeeded Slats & Nails. Because some evidence supports the conclusion, it was not arrived at in error. The objection is overruled.

{¶ 12} Having overruled relator's objection, we adopt the decision of the magistrate in its entirety and deny the request for a writ of mandamus.

*Writ of mandamus denied.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Aero Pallets, Inc.,                    :

        Relator,                               :

v.                                                   :              No.  19AP-829

State of Ohio Bureau of                              :              (REGULAR CALENDAR)
Workers' Compensation et al.,
                                                     :
        Respondents.
                                                     :

-----

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 26, 2021

-----

*McNamara Demczyk Co., LPA*, and *Sidney N. Freeman,* for relator.

*Dave Yost,* Attorney General, and *John R. Smart,* for respondent Ohio Bureau of Workers' Compensation.

-----

IN MANDAMUS

{¶ 13} Relator, Aero Pallets, Inc., seeks a writ of mandamus ordering respondent Ohio Bureau of Workers' Compensation ("BWC") to vacate orders of the administrator's designee and the adjudicating committee that deemed relator the successor to Slats and Nails Pallets, Inc. ("Slats and Nails") for the latter company's unpaid obligations to BWC and for its workers' compensation experience rating.

Findings of Fact:

{¶ 14} 1. Slats and Nails is or was a wood pallet manufacturing business operating at 10465 Sandyville Ave. SE, East Sparta, Ohio. The sole shareholder of Slats and Nails at the time of incorporation on May 11, 2011 was David Fioretto. (Stip. at 274.)

{¶ 15} 2. Slats and Nails applied for workers' compensation coverage effective May 2011. (Stip. at 36.) According to the BWC's records, coverage lapsed due to non-payment effective December 1, 2011 and was never reinstated. (Stip. at 274.)

{¶ 16} 3. BWC asserts that the policy for Slats and Nails has an unpaid balance due of over $600,000 for non-complying claims and unpaid premiums. (Stip. at 274.)

{¶ 17} 4. Slats and Nails was itself formed to take up the activity of a previous pallet business operating at the same location which became insolvent and was subject to a forced sale by the United States Internal Revenue Service for back taxes. By order issued February 16, 2018, BWC found that Slats and Nails' experience and liability would not follow from the previous operator at the cite because of the involuntary nature of the sale. BWC allowed this clean slate for the new operator despite the fact that there were significant connections and overlaps between the principals of the new company, including David Fioretto, and the previous owners. (Stip. at 274.)

{¶ 18} 5. Concurrently with his incorporation of Slats and Nails and assumption of manufacturing operators at the East Sparta plant, David Fioretto established two limited liability corporations in Ohio: S & N Holdings Group, LLC, which owned the real estate and buildings for the pallet operation, and S & N Equipment Leasing, LLC, which owned related equipment including saws, nailers, and vehicles. David Fioretto is the sole owner of both LLCs. (Stip. at 274.)

{¶ 19} 6. Paul Robert Collier is the sole shareholder of Aero Pallets, Inc., incorporated in Ohio on July 20, 2015. (Stip. at 30.) Collier testified in administrative proceedings that he was the office manager for Slats and Nails at the time he formed Aero Pallets, but his objective for Aero Pallets was to serve as an independent pallet broker providing customers with custom-built pallets from various manufacturers, including but not limited to Slats and Nails.

{¶ 20} 7. Aero Pallets applied on October 6, 2015 for Ohio workers' compensation coverage stating the business as "Wholesale Trade Agent, brokering pallets." (Stip. at 32.)

The application did not describe any employees operating in manufacturing positions, but only two employees engaged in office work. (Stip. at 32.)

{¶ 21} 8. Collier testified in administrative proceedings that continuing financial difficulties for Slats and Nails compromised his ability to secure custom pallets for his Aero Pallets customers. He was forced to contemplate entering the manufacturing business himself to fulfill his outstanding orders.

{¶ 22} 9. Aero Pallets entered into an equipment lease with S & N Equipment Leasing, LLC on February 29, 2016 for the use of the pallet manufacturing equipment at the East Sparta plant. (Stip. at 2.) The lease was for a ten-year term at a monthly rental rate of $19,000 with a purchase option of $5,000 at expiration of the lease. (Stip. at 2.)

{¶ 23} 10. Concurrently, Aero Pallets entered into a real estate commercial lease with S & N Holdings Group, LLC for the East Sparta plant property. Again, the term was for ten years at a monthly rental of $9,000. (Stip. at 2.) There was no purchase option at the end of the real estate lease.

{¶ 24} 11. Concerned that the business undertaken by Aero Pallets constituted an attempt to continue the business of Slats and Nails while avoiding prior workers' compensation obligations, and prompted in part by an injury and resulting claim sustained by a manufacturing employee at the East Sparta plant, BWC undertook an investigation. BWC's Special Investigations Department produced a 12-page report dated June 2, 2016 with voluminous documentary attachments. (Stip. at 28.) The report outlines the close connections between principals, owners, and employees of various companies involved, and the often-indistinguishable manufacturing operations of Slats and Nails and Aero Pallets.

{¶ 25} 12. The investigator's report notes that according to payroll records, 35 Slats and Nails employees simultaneously worked for that company and Aero Pallets in the first quarter of 2016. During this period, Aero Pallets reported two clerical employees for workers' compensation coverage with no duties outside of the office and payroll in the amount of $61,620. (Stip. at 22.) In the same period, an injured worker claim was filed for an injury occurring on April 15, 2016 while employed by Aero Pallets. The worker suffered a partial amputation of an index finger while operating heavy machinery stacking pallets in the plant. (Stip. at 22.) Payroll stubs for this employee indicated a transfer from Slats and

Nails on or about April 3, 2016 to Aero Pallets as employer. (Stip. at 22.) Aero Pallets did not seek coverage for production employees in this period.

{¶ 26} 13. Investigators noted numerous vehicles owned by S & N Equipment Leasing and bearing either Aero Pallets or Slats and Nails identification painted on them. (Stip. at 20.) The investigator concluded as follows:

> The above and below facts show that Aero Pallets is a pallet manufacturing business located at the same location as Slats and Nails Pallets, sharing the same phone number, co-mingling operations within the same location (manufacturing and office), transferring employees from Slats and Nails Pallets to Aero Pallets with the current Owner of Aero Pallets (Paul Collier Jr) being a former employee of Slats and Nails Pallets/S & N Pallets since at least 2007. In the 1st quarter 2016, 35 Slats and Nails Pallets employees began working for Aero Pallets. Of these 35, 34 also worked for [Slats] and Nails Pallets during the same 1/16 quarter. The BWC U-3 advised there was no previous policy and the business was not acquired.

(Stip. at 18.)

{¶ 27} The investigator also noted co-mingled operations between Aero Pallets and another company, Aero Transportation, incorporated in Ohio April 28, 2015. The sole owner of Aero Transportation, whose trucks were seen parked at the Aero Pallets' loading dock at the East Sparta plant, was one Miklos Fioretto, who formerly was president of Slats and Nails. (Stip. at 24.) Miklos Fioretto also earned W-2 wages from Aero Pallets and was the highest paid W-2 employee for Aero Pallets in 2015. (Stip. at 24.)

{¶ 28} 14. By letter dated August 1, 2017, BWC informed Aero Pallets that the application for a new workers' compensation account for Aero Pallets would be refused because it was a continuation of Slats and Nails business:

> We received the *Application for Ohio Workers' Compensation Coverage* (U-3) you recently submitted for AERO PALLETS, INC. Our records show you already have the BWC policy referenced above. After further review of the information provided on the application, we have determined that AERO PALLETS, INC. is essentially the same employer as SLATS & NAILS PALLETS INC. for workers' compensation purposes. We based this decision on the requirements of Ohio Administrative Code Rule 4123-17-13. This rule controls the making of the initial application for rating.

> Because of this decision, we cannot process your recent application for workers' compensation coverage. Please report work-related injuries and payroll, and pay your workers' compensation premium using the existing policy.

(Emphasis sic.) (Stip. at 102.)

{¶ 29} 15. Aero Pallets protested its successor status for BWC purposes and, by letter dated February 27, 2018, BWC maintained its position:

> We have reviewed your complaint requesting reversal of a combination between multiple entities of similar operations. Regrettably, we must deny your request. Our policy underwriting unit combined your existing policies after determining that the employers are essentially the same employer.
>
> The Ohio Administrative Code (OAC) rule 4123-17-13(D) requires us to evaluate an employer's application for new coverage to determine if that employer is essentially the same employer for which coverage had previously been provided, regardless of entity type. The policy underwriting unit determined the employers are the same. Thus, we combined the policies to transfer the prior coverage pursuant to OAC rule 4123-17-02.

{¶ 30} 16. Aero Pallets requested a hearing before the adjudicating committee, which heard the mater on July 26, 2018. (Stip. at 272.) The adjudicating committee heard testimony from Collier and the BWC investigators. By order mailed October 26, 2018, the adjudicating committee determined that Slats and Nails' experience, rights, and obligations would be transferred to Aero Pallets in the workers' compensation program:

> The Committee finds there was a voluntary transfer of the pallet manufacturing business operation from Slats & Nails Pallets, Inc. to Aero Pallets, Inc. This scenario is on the more complex end of the maneuvering some business owners do when effectively transferring a business operation to another. In February 2016, Aero Pallets, Inc. began operating the same business as Slats & Nails Pallets, Inc. An equipment lease was used instead of a purchase agreement. The lease terms operate as a financing vehicle for the business operation. The lease was for a term of ten years at the monthly rental rate of $19,000.00 for a total amount of $2,280,000.000 [sic], with a purchase option of only $5,000.00 at the expiration of the lease. The lease terms when Mr. Fioretto leased the equipment from his

equipment leasing company (S&N Equipment Leasing, LLC) to his operating company (Slats & Nails Pallets, Inc.) was $2,500 initially with monthly rent of only $4,500 after January 1, 2014.

The owner of Aero Pallets, Inc., Bob Collier, stated he had worked for S and N Pallets, Inc. and Slats & Nails Pallets, Inc. for twenty to twenty-five years and was a manager of the company. The Committee asked Mr. Collier how exactly he started a pallet broker business in 2015, Aero Pallets, Inc., that would be competing with Slats & Nails Pallets while he stilled [sic] worked there. Mr. Collier stated that some of Slats & Nails Pallets customers would not do business with them because they did not have a Certificate of Ohio Workers' Compensation. The apparent solution to that problem was to funnel the pallets orders on paper through Aero Pallets, Inc. None of the documents to support Aero Pallets, Inc. actually operated as a pallet brokerage were submitted, but they also are not needed to decide the issue. What is evident from the leasing documents is that Aero Pallets took over the business operation in February of 2016. What transpired was tantamount to a voluntary transfer of a business operation. The business operation transferred from one operating company to another operating company.

When a business is transferred in whole, the purchaser (successor) inherits the rate and liability of the business it has acquired. The Supreme Court has held a "successor in interest" for workers' compensation purposes "is simply a transferee of a business in whole or in part." *State ex rel. Lake Erie Constr. Co. v. Indus. Comm.*, 62 Ohio St.3d 81 (1991). The language of the statute clearly refers to a voluntary act of the employer. *State ex rel. Valley Roofing v. Ohio Bureau of Workers' Compensation*, 122 Ohio St.3d 275 at ¶ 5, quoting, *State ex rel. Crosset Co.,* 87 Ohio St.3d at 471.

When Mr. Collier took over the business operation he should have contacted the bureau and addressed the outstanding liabilities of Slats & Nails Pallets, Inc. before executing the Commercial Lease and Equipment Lease Agreement. "Whenever one employer succeeds another employer in the operation of a business in whole or in part, the successor shall notify the bureau of the succession." Ohio Adm. Code 4123-17-02(C)(1). There is a process in place where the bureau will notify the parties of the outstanding obligations. Notifying the bureau of the transfer naturally would have had an impact on the value of the business, but for good reason. The State Insurance Fund has responded to nineteen noncomplying

claims of Slats & Nails Pallets, Inc. and paid benefits well into the six figures. Outstanding liabilities must be addressed because the successor becomes liable. This is routine due diligence that any prudent business owner must conduct. Otherwise, the owner of a business such as Mr. Fioretto, who violated the law by operating without coverage and failing to pay premiums obtains financial benefit when the business concern probably was not worth multi-millions due to the outstanding liabilities to the bureau.

(Stip. at 275-76.)

{¶ 31} 17. The administrator's designee held a hearing on May 23, 2019 and issued an order mailed July 30, 2019 upholding the adjudicating committee's determination. The administrator's designee concluded that, pursuant to R.C. 4123.32 and Ohio Adm.Code 4123-17-13, BWC had correctly determined that Aero Pallets was, for workers' compensation purposes, the same employer as Slats and Nails, and should inherit the predecessor company's risk history and unpaid obligations:

As the Adjudicating Committee pointed out, the facts substantiate a voluntary transfer of the pallet manufacturing business from Slats & Nails Pallets to Aero Pallets. While BWC agrees the parties did not enter into a purchase agreement, they effectuated the voluntary transfer via a 10-year equipment lease and real estate lease under terms far less favorable than S&N Equipment Leasing, LLC and Slats & Nails Pallets had negotiated. Analyzing this factor, in conjunction with the facts discussed above, BWC's combination of the policies was appropriate. Aero Pallets voluntarily assumed the business operations of Slats & Nails Pallets and Mr. Collier's explanation that Aero Pallets would have gone out of business had it not begun pallet manufacturing does not negate the voluntariness of the transaction. To that point, Mr. Collier indicated he attempted to seek a separate manufacturer with an entity called Pallet People, from which he initially bought pallets, but the arrangement did not work out and they parted ways. Aero Pallets cannot claim its initial industry pursuit was in pallet brokering, with the apparent outcome of assisting Slats & Nails Pallets to continue operating without workers' compensation coverage, and then claim it was later forced into pallet manufacturing by Slats & Nails Pallets' closure to keep Aero Pallets' broker business running.

(July 30, 2019 order, omitted from stipulated administrative record and submitted as Addendum to Rel.'s Brief.)

{¶ 32} 18. Aero Pallets filed its complaint for a writ of mandamus on December 10, 2019.

Discussion and Conclusions of Law:

{¶ 33} In order for this court to issue a writ of mandamus, Aero Pallets must show a clear legal right to the relief sought, a clear legal duty on the part of respondent BWC to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). In this case, Aero Pallets must establish that the administrator's designee's order is contrary to law or constitutes a gross abuse of discretion because it is not supported by any evidence in the administrative record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76-79 (1986); *State ex rel. Ugicom Ent. v. Morrison,* 10th Dist. No. 17AP-895, 2021-Ohio-1269.

{¶ 34} R.C. 4123.32 defines the authority and obligation of BWC to exercise its fiduciary duty to protect the state insurance fund when reviewing an employer's initial application for workers' compensation coverage:

> The administrator of workers' compensation, with the advice and consent of the bureau of workers' compensation board of directors, shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund including all of the following:
>
> (A) A rule providing for ascertaining the correctness of any employer's report of estimated or actual expenditure of wages and the determination and adjustment of proper premiums and the payment of those premiums by the employer;
>
> (B) Such special rules as the administrator considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the

administrator, the employer's account and shall continue the payment of all contributions due under this chapter.

{¶ 35} As required by R.C. 4123.32(B), BWC has promulgated rules governing the review of application and determination of successorship status for businesses. Ohio Adm.Code 4123-17-13(C) provides as follows:

> If the bureau determines, after reviewing the information submitted with the application provided for in paragraph (A) of this rule, that the employer was subject to division (B)(2) of section 4123.01 of the Revised Code but failed to comply with the law in matters of workers' compensation coverage, the bureau shall notify the employer in writing of such a finding and request any additional information required to make a determination of the period for which the employer was not in compliance with the law. Upon such determination, the bureau shall notify the employer of the premium and assessments due for the period of noncompliance.

{¶ 36} Ohio Adm.Code 4123-17-02(B)(2) also addresses the transfer of the previous employer's risk experience:

> Where a legal entity having an established coverage or having had experience in the most recent experience period wholly succeeds one or more legal entities having established coverage or having had experience in the most recent experience period and at least one of the entities involved has a merit rating experience, the experience of all the involved entities shall be combined to establish the rate of the successor.

{¶ 37} A successorship finding under these provisions is justified where the subsequent employer has assumed the occupation or industry of the previous employer, but the focus in such a determination is on the transfer of business operations or labor, not concepts of corporate succession. *K & D Group, Inc. v. Buehrer,* 135 Ohio St.3d 257, 2013-Ohio-734,¶ 13. Otherwise put, intervening corporate entities and distinctions are not material to this analysis, and such succession does not require a strict transfer of assets. *Id.*

{¶ 38} The magistrate concludes that there is evidence in the record to support the administrator's designee's final determination in this matter. Moreover, because the transaction under review involved a functional transfer of use for all equipment and real estate assets from Slats and Nails to Aero Pallets, along with the more pertinent wholesale transfer of labor, the decision in this case is not a particularly controversial one.

**{¶ 39}** The investigator's report, which is not significantly contravened as to most of its facts, established that the sole owner of Aero Pallets is a long-time employee of Slats and Nails; that the business operates in the same location and with the same equipment; that the manufacturing and transportation staff of Slats and Nails transferred en masse to Aero Pallets; that Slats and Nails had a significant balance due and in fact almost entirely disregarded its obligation to provide workers' compensation coverage to its employees; and that a transfer of business between closely-related parties resulted in an attempt to extinguish those existing obligations. So intertwined were the two businesses at the time of transfer that a claim by an injured employee resulted in a finding of overlap of payroll and coverage and resulted in the same deficiently defined coverage as existed for employees prior to the transfer.

**{¶ 40}** While Aero Pallet's owner gave alternative explanations for the transition from Slats and Nails, BWC was not obligated to prefer this version of events when assessing whether the transfer was a voluntary assumption of the previous employer's business operations. "So long as there is some evidence in the record to support the decision, the bureau acted within its discretion and the granting of a writ of mandamus is not warranted. *State ex rel. Secreto v. Indus. Comm.*, 80 Ohio St.3d 581, 582-583, 1997-Ohio-29, 687 N.E.2d 715 (1997)." *State ex rel. Daily Servs., L.L.C. v. Morrison*, 154 Ohio St.3d 498, 2018-Ohio-2151, ¶ 17. Where the administrator's designee issues an order that itemizes and analyzes evidence supporting a finding that one employer has wholly succeeded another with the purpose of evading responsibility for the prior employer's obligations under workers' compensation law, no writ should issue. *Id.* at ¶ 26-27.

**{¶ 41}** In short, there is ample evidence in the administrative record to support the administrator's designee's conclusion that the transfer of the pallet manufacturing and transportation operation from Slats and Nails to Aero Pallets was a voluntary transfer of business between the two risks subject to statutory and regulatory rules requiring a transfer of existing obligations and risk history. It is therefore the decision and recommendation of the magistrate that there was no abuse of discretion on the part of the administrator's designee and the requested writ of mandamus should be denied.

/S/ MAGISTRATE
MARTIN L. DAVIS


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).