508 P.2d 78

**INDEPENDENT GIN CO., INC., an Arizona corporation, Appellant,**

v.

**Bert D. PARKER and Violet L. Parker, husband and wife, Appellees.**

**No. 2 CA–CIV 1316.**

Court of Appeals of Arizona, Division 2.

April 4, 1973.

Karman & Brumage by David M. Ochoa, Casa Grande, for appellant.

Wood, Platt & Jenson by Dennis D. Jenson, Coolidge, for appellees.

KRUCKER, Judge.

The sole issue involved in this appeal is whether the lower court erred in its conclusion that appellant, as an assignee, was liable for rent due on a lease between appellees as lessors and one Frank Lang as lessee.

The lessors instituted this lawsuit against Lang, an appellant, to recover the sum of $8,443, unpaid rent which was due October 15, 1969. Defendant Lang neither appeared nor answered and his default was entered.

The plaintiffs' claim against appellant was predicated on the theory of equitable assignment. The defendant's position was that it was not obligated to pay the rent, it being neither a signatory to the lease nor an assignee thereof.

The case was tried to the court which made extensive findings of fact and conclusions of law. The pertinent findings are as follows. The defendant's principal business is the ginning of cotton, financing growers of cotton and farming on its own behalf. On or about January 30, 1964, the plaintiffs entered into a written lease agreement wherein they leased their farming land in Pinal County to Lang for a term ending on December 31, 1966. Prior thereto, Lang had been financing his farming operation through the defendant and at

the conclusion of the 1964 crop year was indebted to it in excess of $190,000 for loans made to and not repaid by him. At the beginning of the 1965 crop season, Lang and the defendant agreed to certain restrictions on Lang's operations, i. e., that all expenses incurred in the farming operation and all bills were to be presented to defendant for payment and that Lang was to be allowed to draw $500 per month for living expenses. On February 16, 1965, plaintiffs and Lang entered into an amendment of their lease whereby the lease period was extended until December 31, 1969.

After the 1965 cotton crop had been planted, Lang informed the defendant that he was unwilling and unable to continue his operation in accordance with their agreed-upon arrangement and that he was abandoning the farming operations and moving to Texas. The defendant then requested of Lang that he allow it to carry on the farming operation and he sent the defendant a letter dated June 18, 1965, which stated in part:

"As you know from our past conversations I am going to go for the summer to Dallas, Texas, and work for the Custom Machine and Engineering Co. . . .

It is my intention to return for a day or two on about the fifth of each month at which time I will confer with you.

During my absence I hereby designate you and your company to act as my agent in the operation of the Parker Ranch and you are hereby authorized, in my absence, to make any decisions that maybe necessary in connection therewith and pay any bills or expenses which you deem absolutely necessary in my absence.

I do hereby release you, at this time, from any and all liabilities which you may incur, if any, in acting on my behalf and I further do hereby agree to indemnify you and hold you harmless from any damages or claims which may arise from any conduct or acts you may perform on my behalf."

On February 21, 1966, at defendant's request, Lang executed to defendant's manager, Gid Lawhon, an instrument captioned "Power of Attorney" authorizing Lawhon to act on his behalf in transacting any and all business of whatever nature in regard to the crops and farming operations located within the State of Arizona. On December 15, 1966, Lang executed to defendant a bill of sale conveying all of Lang's interest in certain farm machinery and equipment which he had used in his farming operation and in which defendant held a security interest.

The defendant farmed the lands leased to Lang by the plaintiffs from the time Lang left in 1965 until the expiration of 1969. Lang received no money from defendant as he had prior to his departure in May, 1965. On December 29, 1966, the defendant's president negotiated with the plaintiffs to amend the lease to provide that rent was to be paid on the basis of $65 per cotton allotment acre payable in two equal amounts on February 15 and October 15. Lang took no part in these negotiations and the lease amendment was signed by Lawhon as attorney in fact for Lang.

Lang never executed a formal written assignment of the lease to the defendant. There was, however, a discussion between defendant and the plaintiffs concerning an assignment and the plaintiffs, in a written agreement prepared by the defendant, did agree to allow assignment of the lease to the defendant.

There was no evidence of any agreement, oral or otherwise, between the defendant and Lang that the latter was ever to regain possession of the premises during the term of the lease and Lang never did regain possession of same. Lang took no part in the farming operation and the defendant, after Lang's departure in 1965, assumed complete control of the total farm operation. All bills incurred in such operation were paid by the defendant, including all rent with the exception of the final payment due October 15, 1969.

The court also expressly found that in the summer of 1969, Lang sought to revoke the powers that he had given the defendant so that he could collect the government subsidy payment due on the 1969 crop; also, that as a result of this attempted revocation, the defendant brought an action in superior court to prevent the subsidy payment from being made to Lang and to declare that the total balance due to defendant was payable; and that this case was ultimately settled by the parties. During and after the termination of this lawsuit, the defendant remained on the leased premises carrying on the farming operation, just as it had previously, until the expiration of the lease on December 31, 1969.

From the foregoing findings of fact, the court concluded that there was an equitable assignment of the lease or leases to the defendant and that the defendant was liable to the plaintiffs for the rental due. Since it has not been demonstrated that the findings of fact are clearly erroneous, we accept them as true. Thus, the only question to be resolved is the correctness of the conclusion of law as to an equitable assignment.

■ Where a person, other than the lessee, is shown to be in possession of leased premises and paying rent therefor, the law presumes that the lease has been assigned to him. Holcomb v. Clark, 27 Ariz. 573, 234 P. 1075 (1925); Leadbetter v. Pewtherer, 61 Or. 168, 121 P. 799 (1912); Quine v. Sconce, 209 Or. 486, 306 P.2d 420 (1957); Baehr v. Penn-O-Tex Oil Corp., 258 Minn. 533, 104 N.W.2d 661 (1960); Abbott v. Bob's U-Drive, 222 Or. 147, 352 P.2d 598 (1960); Risolo v. Bruno, 36 Misc. 2d 247, 232 N.Y.S.2d 436 (1962); Karbelnig v. Brothwell, 244 Cal.App.2d 333, 53 Cal.Rptr. 335 (1966); Clasen v. Moore Bros. Realty Co., 413 S.W.2d 592 (Mo. App.1967).

■ It is true that such presumption from the facts of entry and occupation, coupled with the payment of rent, is merely prima facie evidence of an assignment and may be rebutted by proof that the person charged as assignee never in fact had an assignment of the lease. Holcomb v. Clark, supra. Defendant, being in possession and paying rent, was therefore presumptively an assignee of the leasehold term. It was incumbent upon it, in order to prevail, to explain that the real character of its possession was otherwise.

■ The defendant's position was that it was merely Lang's agent and that its entry on and possession of the leased premises was merely in such capacity. However, one asserting an agency relationship has the burden of proving it. Myers-Leiber Sign Co. v. Weirich, 2 Ariz.App. 534, 410 P.2d 491 (1966); Calkins v. Oxbow Ranch, Inc., 495 P.2d 1124 (Mont.1972). A person is not an agent for another unless the other had a right to control the transaction in question and to have it done for his benefit. Seavey, Law of Agency § 11 (1964). Agency is a question of the intention of the parties, as evidenced by their acts, and is not dependent upon what the particular person in question is called. Arizona State Tax Commission v. Parson-Jurden Corp., 9 Ariz.App. 92, 449 P.2d 626 (1969). The thrust of the trial court's factual findings is that Lang had relinquished all control and dominion over the subject matter of the purported agency—the farming operations, the leased premises, and the machinery used in the operations. He never asserted any claim until the summer of 1969 when he attempted to obtain the government allotment. The defendant's conduct in commencing litigation to prevent this can be construed, as apparently the trial court did, as conduct negativing an agency relationship.

■ Since the factual findings militate against an agency relationship, the trial court apparently concluded that none existed. Such conclusion leaves unrebutted the presumption that defendant was in possession as an assignee of the lease. Therefore imposition of liability for the unpaid rent was proper.

**416**

For the foregoing reasons, the judgment is affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.