[Cite as *Albright v. Varicon, L.L.C.*, 2014-Ohio-209.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99967**

---

## ROGER ALBRIGHT, ET AL., TRUSTEES

PLAINTIFF-APPELLANT

vs.

## VARICON, L.L.C.

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-784918

**BEFORE:** McCormack, J., Boyle, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 23, 2014

**ATTORNEYS FOR APPELLANT**

James Brian Kenney
Jessica Weekley
J. Brian Kenney Co., L.P.A.
20545 Center Ridge Rd.
Suite 420
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

Michael P. O'Donnell
Christopher J. Carney
Brouse McDowell, L.P.A.
600 Superior Avenue, East
Suite 1600
Cleveland, OH 44114

TIM McCORMACK, J.:

{¶1} This appeal concerns a dispute over a commercial lease. Plaintiff-appellant, a Connecticut trust whose trustees are Roger Albright and John Labanca ("landlord" or "appellant"), appeals from a decision of the trial court denying its motion for summary judgment and granting summary judgment in favor of defendant-appellee tenant, Varicon, L.L.C. ("tenant" or "appellee"). For the following reasons, we affirm the trial court's decision denying the landlord's motion for summary judgment, reverse its decision granting summary judgment in favor of the tenant, and remand the case for further proceedings consistent with this opinion.

## Substantive Facts and Procedural History

{¶2} This commercial lease case involves three entities — the landlord, the original tenant (not a party in this case), and a corporate entity who purchased the assets of the original tenant and continued to occupy the premises after the original tenant ceased to exist.

{¶3} On December 10, 2007, Innovative Container Operating Company, L.L.C., a South Carolina company (hereafter "ICOC"), entered into a five-year lease with the landlord Roger Albright and John LaBanca, trustees of a Connecticut trust whose office is located in Texas, to rent 41,350 square feet of warehouse and office space in Bedford Heights, Ohio. The rent was $12,182.71 per month, and the lease was to expire December 12, 2012.

## Original Tenant Sold its Assets to Varicon

**{¶4}** One year after the lease was signed, the original tenant, ICOC, experienced financial difficulties. On December 31, 2008, ICOC sold almost all its assets to an entity called ICOC Acquisitions, L.L.C., which was formed by business partners Mark Daniels and Rod Grandy for the sole purpose of purchasing the assets from ICOC.

**{¶5}** ICOC Acquisitions paid four million dollars for ICOC's assets, including its receivables, machinery, equipment, and inventory. Days after the sale of its assets, ICOC was dissolved; the South Carolina secretary of state's website indicates ICOC was "dissolved" as of January 8, 2009.

**{¶6}** According to Mark Daniel's affidavit, there was no stock transfer in the assets-purchase transaction, and none of the ICOC's former owners participated in the management of ICOC Acquisitions. Nothing in the record indicates who the former owners or principals of the new company are, however.

**{¶7}** ICOC Acquisitions is in the bulk container business, selling plastic containers and related tracking services. Three months after purchasing the assets of ICOC, on March 9, 2009, ICOC Acquisitions changed its name to Varicon, L.L.C. In its brief, Varicon states that for the purposes of this appeal, ICOC Acquisitions and Varicon are one and the same. We refer to the entity as Varicon in the following.[1]

---

[1] There was another entity, Container Management Systems, controlled by the two business partners Daniels and Grandy. A letter dated April 14, 2009, from Varicon's president to landlord announced the merger of ICOC Acquisitions and Container Management Systems. (In his affidavit, however, Daniels stated Container Management Systems merged into Varicon on January 15, 2012.) This fact is only important for the clarification that there was indeed a merger in this case, but it was

{¶8} As evidence of landlord's knowledge of the former tenant ICOC's insolvency, Varicon submitted a letter dated January 5, 2009, addressed to "Colors for Plastics," presumably a creditor of ICOC. The letter informed the recipient that ICOC was no longer able to continue its operations, had sold its assets to ICOC Acquisitions for four million dollars, used the funds to retire ICOC's debts to its senior secured creditor, and was unable to pay its debts to other creditors. The letter stated the buyer corporation "is operating under a different name," without specifying what the new name was. Landlord alleged it never received a copy of this letter.

## The Alleged Sublease

{¶9} The Bedford Heights lease was specifically referenced in the Asset Purchase Agreement (hereafter "APA") between ICOC and ICOC Acquisitions. Article 5 of the APA, titled "Related Transactions," addressed ICOC's leases. Two sections in Article 5 dealt with the three leases ICOC was currently under: two of them related to locations in South Carolina and one of them was the Bedford Heights lease. Under the APA, the two South Carolina leases were expressly assumed by Varicon.

{¶10} However, Section 5.5 (titled "Sublease Agreement") stated that ICOC Acquisition "shall have entered into" a sublease agreement with ICOC regarding the Bedford Heights warehouse. Meanwhile, in Schedule 1.1 of the APA ("List of Assets"), the security deposit of the Ohio lease was listed as an asset.

---

the merger of Varicon and Container Management Systems, not the merger of Varicon and ICOC.

**{¶11}** Furthermore, Schedule 3.2 of the APA stated that "The Ohio Lease may not be subleased without the written consent of the Ohio Landlord. Seller will be seeking the Ohio Landlord's consent in connection with the sublease to the Buyer."

**{¶12}** In moving for summary judgment, Varicon submitted a copy of a "Sublease Agreement" between ICOC and ICOC Acquisitions, which stated a sublease was effective as of January 1, 2009, and the sublease would provide for a twice-renewable 30-day sublease between those two entities. The agreement was signed by officers of ICOC and ICOC Acquisitions. It was not dated, however.

**{¶13}** Although the APA required the landlord's consent, the evidence does not contain the landlord's consent to the sublease, written or otherwise. In fact, there is no evidence that the landlord was even aware of the sublease agreement or its terms.

**{¶14}** The sublease, pursuant to its terms, expired April 2009, but Varicon continued to occupy the premises and paid rents for 20 more months. On December 30, 2011, Mark Daniels sent a correspondence to landlord, stating: "Please allow this letter to serve as notice of our intent to terminate our current month-to-month tenancy" regarding the subject premises. The termination was to be effective January 31, 2012. Despite the reference to the month-to-month tenancy, Varicon, in moving for summary judgment, did not submit evidence showing how and when the purported "month-to-month" lease came into existence. Despite the notice of "termination," Varicon remained on the premises and continued to pay rent through March 2012.

**{¶15}** Landlord filed a complaint in the common pleas court to recover rents from April 2012 to December 2012 (when the five-year lease was to expire), totaling $109,689.39, plus outstanding utility bills of $1,900.82.

**{¶16}** Both parties then moved for summary judgment. The trial court denied the landlord's motion for summary judgment, but granted summary judgment in favor of Varicon, holding that Varicon was not liable for the balance of the lease because it did not "impliedly assume" the five-year lease.

**{¶17}** On appeal, appellant landlord raises two assignments of error for our review. Under the first assignment of error, landlord claims the trial court erred in denying its motion for summary judgment. Under the second assignment of error, appellant landlord claims the trial court erred in granting Varicon's motion for summary judgment. We address these claims together.

## Summary Judgment Standard

**{¶18}** We review summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**{¶19}** Pursuant to Civ.R. 56, summary judgment is proper when

(1) no genuine issue as to any material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶20}** "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial'. The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party." *March v. Steed Ents.*, 5th Dist. Muskingum No. CT 2012-0058, 2013-Ohio-4448, ¶ 18-19, citing *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374. The moving party seeking summary judgment "bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

## The Successor Liability Rule and the Exceptions

**{¶21}** This case concerns successor liability as it applies to claims sounding in contract. The issue is whether a corporation who purchased the assets of another corporation may be held liable for the contractual obligations of the seller corporation. The law regarding successor liability was discussed by the Supreme Court of Ohio in *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 617 N.E.2d 1129 (1993).

**{¶22}** In *Welco*, the Supreme Court of Ohio reiterated the well-established general rule of successor liability: the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation, unless one of the exceptions applies. *Id.* at 346-347. A successor corporation may be held liable when "(1) the buyer corporation expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de

facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Id*. at 347.

{¶23} The court in *Welco* elaborated on the concepts of "de facto" merger and "mere continuation." Regarding a de facto merger, it is a

> merger in fact without an official declaration of such. The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations. One court has indicated that a transfer of assets for stock is the sine qua non of de facto merger.

(Citation omitted.) *Id*. at 349.

{¶24} Regarding the "mere continuation" exception, the court in *Welco* explained that

> the basis of this theory is the continuation of the corporate entity, not the business operation, after the transaction. Such would be the case when "one corporation sells its assets to another corporation with the same people owning both corporations. Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation. This is actually a reorganization." This type of transaction is executed to escape liabilities of the predecessor corporation. Because the goal is to escape liability, inadequacy of consideration is one of the indicia of mere continuation.

(Citations omitted.) *Id*. at 350.

## Bases of the Parties' Motions for Summary Judgment and Issue Presented in this Case

{¶25} Turning to the instant case, the parties' dispute centers on the first exception, under which a successor corporation such as Varicon may be held liable if it expressly or impliedly agreed to assume the seller corporation's contractual liability. It is undisputed that under the APA, Varicon did not expressly assume the five-year lease between ICOC and the landlord. The issue is whether Varicon *impliedly* assumed the lease.

{¶26} The landlord moved for summary judgment on two grounds. It claimed that Varicon, through its conduct, either (1) impliedly assumed the lease — the first of the four exceptions to successor liability — or (2) should be estopped from denying its assumption of the lease. Varicon moved for summary judgment claiming that none of the four exceptions to the successor liability rule existed in this case.

{¶27} We first clarify the question to be resolved in this appeal. The trial court granted summary judgment in favor of Varicon based on its finding that Varicon did not impliedly assume the lease. Even though there could be an issue of fact regarding whether one of the three other exceptions would be applicable to render Varicon liable, the trial court was silent regarding these other exceptions in its judgment.

{¶28} However, because the trial court granted summary judgment in favor of Varicon, we must assume it found that none of these other three exceptions existed to create liability for Varicon. On appeal, landlord primarily argues that the trial court erred in denying its motion for summary judgment (first assignment of error). Although landlord also claims the trial court erred in granting summary judgment in Varicon's favor

(the second assignment), landlord devotes merely two paragraphs in its brief addressing this contention.

{¶29} In these two paragraphs, landlord argues only that certain evidence submitted by Varicon for its motion for summary judgment, such as Mark Daniel's affidavit, the undated sublease, and the January 5, 2009 letter to the creditors, was not competent evidence meeting the requirement of Civ.R. 56. Landlord does not specifically argue that a genuine issue of a material fact remains regarding any of the three other exceptions to preclude summary judgment in Varicon's favor. As a result, we do not have a specific claim regarding the other three exceptions to review in this appeal.

{¶30} Consequently, there is only one question to resolve in this appeal: whether there is a genuine issue of a material fact regarding whether Varicon impliedly assumed the five-year lease.

### Implied Assumption/Equitable Assignment

{¶31} The trial court found Varicon did not impliedly assume the lease. Our review of the evidence, however, indicates the contrary. As we explain in the following, the evidence before the trial court created a triable issue of fact regarding whether Varicon impliedly assumed the lease.

{¶32} The Supreme Court of Ohio in *Welco,* 67 Ohio St.3d 344, 617 N.E.2d 1129, explained the concepts of de facto merger and mere continuation, but did not elaborate on the notion of implied assumption. Implied assumption is also referred to as equitable assignment. *See Crown Oil & Wax Co. of Del., Inc. v. Glen Constr. Co. of Va.,*

*Inc.*, 320 Md. 546, 578 A.2d 1184 (1990). In a much earlier decision, the court described the general concept of equitable assignment as follows:

> An equitable assignment requires no particular form. It is accomplished where there is an intention on one side to assign and an intention on the other to accept, supported by a sufficient consideration and disclosing a present purpose to make an appropriation of a debt or fund.

> The intent and effect of an equitable assignment are to be ascertained from all the language used, construed in the light of the surrounding circumstances. The object sought to be accomplished may be considered, as well as the conduct of the parties.

*Gen. Excavator Co. v. Judkins*, 128 Ohio St. 160, 190 N.E. 389 (1934), paragraphs three and four.

{¶33} "Any right of action arising out of contract may be assigned." *Langhals v. Holt Roofing Co.*, 47 Ohio App.3d 114, 116, 547 N.E.2d 401 (6th Dist.1988), citing 6A Corpus Juris Secundum, Assignments, Section 36, at 641 (1975). "[A]ny words or transactions which show an intention on one side to assign and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment." *Id.*, quoting *Morris v. George Banning, Inc.*, 49 Ohio Law Abs. 530, 533, 77 N.E.2d 372 (2d Dist.1947).

{¶34} The doctrine does not appear to have been applied in the lease context in Ohio, but courts in other states have applied this doctrine to find an assignment of a lease. "Where a person, other than the lessee, is shown to be in possession of leased premises and paying rent therefor, the law presumes that the lease has been assigned to him." *Indep. Gin Co. v. Parker*, 19 Ariz. App. 413, 508 P.2d 78 (1973), citing *Holcomb v. Clark*,

27 Ariz. 573, 234 P. 1075 (1925); *Leadbetter v. Pewtherer*, 61 Ore. 168, 121 P. 799 (1912); *Quine v. Sconce*, 209 Ore. 486, 306 P.2d 420 (1957); *Baehr v. Penn-O-Tex Oil Corp.*, 258 Minn. 533, 104 N.W.2d 661 (1960); *Abbott v. Bob's U-Drive*, 222 Ore. 147, 352 P.2d 598 (1960); *Risolo v. Bruno*, 36 Misc.2d 247, 232 N.Y.S.2d 436 (1962); *Karbelnig v. Brothwell*, 244 Cal.App.2d 333, 53 Cal.Rptr. 335 (1966); *Clasen v. Moore Bros. Realty Co.*, 413 S.W.2d 592 (Mo.App.1967).

**{¶35}** Here, after ICOC sold its assets to Varicon and quickly ceased to exist, Varicon continued to occupy the premises and paid rents for more than three years. Varicon claims that it rented the premises under a sublease between ICOC and Varicon.

**{¶36}** Varicon's claim regarding the sublease is problematic in several regards. First, the photocopy of the sublease Varicon submitted was undated — although the text of the document stated the sublease was effective January 1, 2009 — and, even though the sublease was signed by a "VP" of Varicon, the identity of the "VP" is unknown because the signature was illegible.

**{¶37}** Second, the validity of the sublease was called into question by the very terms of the APA. The APA required the landlord's consent in writing regarding the Ohio lease, yet the evidence does not reflect appellant landlord's consent, in writing or otherwise.[2]

---

[2] A review of the original lease between ICOC and the landlord also reveals a provision in the lease that stated that the tenant shall not sublease the premises without written consent of the landlord.

**{¶38}** Third, the sublesssor, ICOC, ceased to exist as of January 8, 2009, a week after the purported sublease began — according to a copy of the South Carolina secretary of state printout submitted by Varicon itself. The question naturally arises as to who Varicon was subleasing the property from after January 8, 2009. Fourth, even if ICOC still existed, the sublease, pursuant to its own terms, was only to last three months.

**{¶39}** Thus, even if there were a valid sublease, the sublease expired in April 2009, yet Varicon continued to occupy the premises and pay rents for 20 more months, long after the purported sublease had expired. The state of the evidence thus leaves the key question unanswered: even if there were a valid sublease for the first three months of 2009, what was the contractual basis for Varicon's continuous occupation of the premises, implied or otherwise? Varicon appears to claim that there was a "month-to-month" lease between Varicon and the landlord, but offered no evidence regarding when and how the "month-to-month" lease came into existence.

**{¶40}** Based on our review of the evidence, therefore, there is a genuine issue of a material fact regarding whether Varicon impliedly assumed the five-year lease, given the parties' conduct after the original tenant ICOC ceased to exist. Therefore, the trial court improperly granted summary judgment in favor of Varicon based on its finding that Varicon did not impliedly assume the lease.

**{¶41}** For the same reason, the trial court properly denied the landlord's motion for summary judgment predicated on the landlord's assertion that no genuine issue of a material fact remains regarding Varicon's implied assumption of the lease.

**{¶42}** Appellant landlord's first assignment of error is without merit, and its second assignment of error is sustained. The judgment of the trial court denying appellant's motion for summary judgment is affirmed, and its judgment granting appellee's motion for summary judgment is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MARY J. BOYLE, A.J., and
EILEEN T. GALLAGHER, J., CONCUR