[Cite as *Gallagher v. Cochran*, 2024-Ohio-3403.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| WILLIAM J. GALLAGHER, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 113554 |
| v. | : | |
| EDWARD W. COCHRAN, ET AL., | : | |
| Defendants-Appellees. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 5, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-908626

### *Appearances:*

Brian J. Halligan, *for appellant*.

Koehler Fitzgerald LLC and Christine M. Cooper, *for appellees*.

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant William J. Gallagher ("Gallagher") challenges the judgment of the Cuyahoga County Court of Common Pleas striking his jury demand, limiting his potential remedy to specific performance, and dismissing his claims against Edward W. Cochran ("Cochran") and Cleveland Plating LLC ("Cleveland Plating")

(collectively "appellees") under Civ.R. 41(B)(2). After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} The substantive facts of this case were summarized by this court in a prior appeal as follows:

> This case concerns Gallagher's attempt to recoup over $500,000 dollars, money that he loaned to Barker Products Company ("Barker Products") while he was employed there. Barker Products was an electroplating company that provided national services. Cochran is a business investor who purchased the assets of Barker Products and formed Cleveland Plating. Gallagher alleges that Cochran offered him employment and an equity stake with Cleveland Plating so that he could be repaid over time. Cochran alleges that he made no such agreement and that Cleveland Plating did not inherit the liabilities of Barker Products.
>
> . . .
>
> After resigning from Ashland University as its Track & Field coach in 2005, Gallagher joined Barker Products at the behest of his friend Benjamin Dagley, ("Dagley"). Gallagher had no previous business experience, having worked as the head coach at Ashland for twenty-five years. Despite that, Dagley, who was an athlete at Ashland, wanted to bring Gallagher in to perform managerial tasks. Gallagher began work as a general manager implementing various procedures and performing administrative tasks for the company.
>
> In 2007, Barker Products began to experience severe financial problems. Dagley had wholly leveraged Barker Products with Chase Bank, its secured lender, and Barker Products was in need of capital to address its financial concerns. Gallagher, at Dagley's request, loaned Barker Products over $400,000 over a period of years. He has not been repaid and as of 2014, the interest on his loans in addition to the principal equaled $511,850.
>
> Sometime in early 2014, Barker Product's accountant, Brian Mackert ("Mackert") reached out to Dagley and Gallagher informing them that he knew of a potential investor, Cochran, with whom Mackert had

worked previously. Cochran was an experienced business person who had success purchasing failing companies. According to Dagley's affidavit, Mackert had introduced Cochran to Dagley in 2007; Mackert informed Dagley that Cochran had made millions from various deals in which Mackert had assisted Cochran.

On behalf of Cochran, Mackert invited Gallagher and two other Barker Products employees, Elba and Diane Wade, to meet Cochran at Cochran's house on September 9, 2014. Dagley was not invited. At the meeting, Cochran questioned Gallagher and the Wades about Barker Products, and specifically asked about Gallagher's debt. According to Gallagher, Cochran told the group that he was interested in purchasing or investing in the company. Cochran asserts in his affidavit that no contract was made and that he only listened to what the group had to say. In fact, Cochran alleges that it was Gallagher and the Wades who led the discussion.

Following the meeting on September 9, 2014, Cochran asked Mackert to schedule another meeting for the next day, September 10, 2014. At Cochran's behest, Mackert invited Gallagher, the Wades, and Dagley to meet with Cochran at Crop Bistro, Cochran's Ohio City Restaurant.

At this meeting, Cochran asked more questions of the group and, according to Gallagher, Cochran indicated that he had decided to purchase or invest in the company. Cochran told the group that he was going to invest in Barker and that the management team would keep their jobs there. He stated that he wanted 60% equity in the company and that the remaining 40% would be divided up however the Barker Products team wanted. Cochran allegedly asked Gallagher to negotiate with Barker Products suppliers to try and secure a reduction in debt and better credit terms in advance of new ownership. Cochran left the team to figure out the equity terms, which Mackert would memorialize and pass on to Cochran.

Cochran disputes that he was the one making proposals and requesting Gallagher's assistance; Cochran alleges that, much like at the September 9th meeting, he merely listened to what the Barker Products team had to say. He states that he received an equity ownership proposal from the group after the meeting, but that it was the Barker Products team who proposed it. However, in his deposition, he references being involved in the equity discussion, though he stated it was a hypothetical. The Barker team clearly took the discussions with

Cochran seriously as they worked with Mackert to prepare a proposal for Cochran's review.

On September 10, 2014, Gallagher initially asked to be treated as a debtholder rather than have an equity share. The Wades, Dagley, and Mackert agreed to his request. However, after Mackert passed this along to Cochran, Cochran rejected that idea and allegedly told Mackert that Gallagher would have to recoup his debt through an equity share. Mackert shared this information with Gallagher.

On September 11, 2014, Gallagher spoke with Dagley and the Wades and they agreed that Gallagher would own 33.45% of the company through an equity share, the Wades 6.55% and Dagley zero, consistent with their individual debt with the company. Gallagher shared this plan with Mackert, who stated he would pass it along to Cochran. Mackert told Gallagher that Cochran would agree to this plan because Cochran merely wanted his 60% share and did not care how the other 40% was divided.

On September 22, 2014, Mackert and Cochran submitted a letter to Chase Bank. The letter stated in part: "Pursuant to a re-organization and or [sic] restructuring of Barker Products Inc. I, Edward Cochran, would like to extend the following offer . . . ." In the letter, Cochran offered to satisfy the current debt of Barker Products, as well as satisfy the mortgage. Cochran asked Dagley to sign the letter to give the offer some legitimacy; Dagley complied, believing that he was to be part of the Barker Products team moving forward. Chase Bank did not accept the offer, however.

. . .

On the same day that Cochran was attempting to purchase Barker Products directly from Chase Bank without involving Gallagher or the Wades, Gallagher received a phone call from Mackert. Mackert told Gallagher that that Barker Products had an overdue bill with The Illuminating Company and that the electrical company had threatened to shut off the electricity unless $10,000 was immediately paid. Mackert asked that Gallagher help out the company. Elba Wade, the production manager, also called Gallagher asking him to make the payment. Gallagher wrote the check, and Wade drove to his house to pick it up. Gallagher made this payment assuming he would be paid back by his employer. However, Gallagher has not been paid by Barker

Products since September 10, 2014, and he has not received another paycheck from the company.

At this point, both Gallagher and Cochran suggest that there was no further communication between the two. In a letter submitted by Gallagher, sent in January 2015, Gallagher asks Cochran whether the Barker Products team is still in Cochran's plans. Gallagher emphasized that the group was enthused by Cochran's strategy to purchase Barker Products. Cochran never replied.

Meanwhile, having failed in his initial attempt, Cochran was pursuing different avenues to acquire Barker Products. In October 2014, Mackert introduced Cochran to Kevin Crawford, a customer of Barker Products. Cochran and Crawford decided to purchase Barker and rename it Cleveland Plating. Crawford, Cochran, and Chase Bank came to an agreement where the duo would purchase Barker Products' assets in a secured party sale and purchase the Barker Products property during a foreclosure sale.

On February 23, 2015, Crawford and Cochran formed Cleveland Plating. On March 13, 2015, Cochran, on behalf of Cleveland Plating, executed a Bill of Sale for $85,000 to purchase the assets of Barker Products. On March 16, 2015, the following Monday, Cleveland Plating began operating at the property under a lease agreement with Barker Products.

Around this time, Gallagher, who was aware of the sale, reached out via email to both Cochran and Crawford asking about his future employment with the company. Crawford responded that he looked forward to meeting with Gallagher and discussing his role with the company. Gallagher states that this meeting never occurred.

Gallagher alleges he was in the dark as to his ultimate fate until November 27, 2015, when Gallagher spoke with Mackert. At that point Gallagher was informed he was not a part of either the ownership group or the management team of Cleveland Plating, formerly Barker Products. He proceeded to file suit.

*Gallagher v. Cochran*, 2020-Ohio-4917, ¶ 2-20 (8th Dist.) ("*Gallagher I*").

{¶ 3} Gallagher originally filed suit in the Wayne County Court of Common

Pleas and eventually obtained a judgment for over one million dollars against

Dagley. Cleveland Plating, Crawford, Cochran, Mackert, and the Wades were also named as defendants. Gallagher later dismissed his claims against Cleveland Plating, Cochran, and Crawford, and refiled suit against Cleveland Plating and Cochran in the Cuyahoga County Court of Common Pleas. The suit alleged the following:

> Cochran and Cleveland Plating are liable to Gallagher for the sum of $511,850 that was loaned for the benefit of Barker. (Claim One)
>
> Cochran and Cleveland Plating breached their agreement to repay Gallagher through an equity position. Gallagher is also owed $10,000 for the money he advanced to Barker to pay the electrical bill. (Claim Two)
>
> Cochran and Mackert, as Cochran's agent, promised Gallagher employment at Cleveland Plating and an equity ownership interest. Through their actions they also fraudulently misrepresented themselves to Gallagher and he reasonably relied on their promises. (Claim Three)
>
> Cleveland Plating is the successor in interest of Barker Products and Cochran is liable to Gallagher as a result. (Claim Four).
>
> Cochran and Cleveland Plating are liable to Gallagher for civil conspiracy. (Claim Five).

*Id*. at ¶ 23.

{¶ 4} Appellees denied the allegations in the complaint and raised certain defenses, including the statute of frauds. They eventually moved for summary judgment, and Gallagher filed a cross-motion for summary judgment as to liability only. The trial court granted the appellees' motion for summary judgment and denied Gallagher's motion.

{¶ 5} Gallagher appealed to this court, asserting that the trial court had erred in granting summary judgment on his claims.

{¶ 6} This court determined that genuine issues of material fact existed with regard to the application of the statute of frauds defense, Mackert's status as an agent for Cochran, Gallagher's first claim (breach of contract), and Gallagher's fourth claim (successor liability).

{¶ 7} The *Gallagher I* panel further determined that the trial court did not err in granting summary judgment on the claims of unjust enrichment, fraudulent misrepresentation, and civil conspiracy.

{¶ 8} The matter was remanded to the trial court for further proceedings. On remand, appellees moved to strike Gallagher's jury demand, arguing that Gallagher's breach-of-contract claim sought specific performance as a sole remedy. Because specific performance is an equitable remedy, appellees argued that no right to a jury trial existed. Gallagher opposed the motion, asserting that he was requesting monetary damages and not equitable relief on either of his surviving claims.

{¶ 9} Appellees also filed a motion in limine, seeking to exclude from trial all references, testimony, and evidence pertaining to money damages because they asserted that Gallagher's remedy was limited to specific performance. Gallagher opposed the motion, again arguing that he was seeking monetary damages and not equitable relief.

**{¶ 10}** The trial court granted the motion to strike and the motion in limine, holding that based upon this court's opinion in *Gallagher I*, specific performance was the only relief that Gallagher was permitted to seek.

**{¶ 11}** The matter then proceeded as a bench trial. Gallagher presented the testimony of Crawford, as the representative of Cleveland Plating, and Cochran, both as if on cross-examination, and Gallagher testified on his own behalf. After Gallagher had rested, appellees moved for dismissal of the case, arguing that the evidence demonstrated that a contract had never been formed. The court agreed and dismissed the case.

**{¶ 12}** Gallagher then filed the instant appeal, raising four assignments of error for our review:

> 1. The trial court erred as a matter of law in granting appellees' motion to strike Gallagher's jury demand.
>
> 2. The trial court erred as a matter of law in determining that Gallagher was only entitled to the remedy of specific performance.
>
> 3. The trial court's granting of appellees' motion to dismiss under Ohio Civ.R. 41(B)(2) was against the manifest weight of the evidence and contrary to law.
>
> 4. The trial court erred as a matter of law and/or abused its discretion in failing to address or recognize Gallagher's fourth claim for relief despite this Court's revival of that claim for successor liability (which is a claim solely for money damages).

## II. Law and Analysis

### A. Motion to Strike Jury Demand and
### Limitation of Remedy to Specific Performance

{¶ 13} Gallagher's first and second assignments of error are intertwined and will be addressed together. In his first assignment of error, Gallagher argues that the trial court erred in striking his jury demand. In his second assignment of error, Gallagher asserts that the trial court erred in determining that he was only entitled to the remedy of specific performance.

{¶ 14} In its order granting appellees' motion to strike Gallagher's jury demand and granting the motion in limine excluding evidence relating to monetary damages, the trial court noted that there was no right to a jury trial if the only relief sought was equitable. Thus, the first issue that we must address is whether Gallagher's remedy was limited to the equitable relief of specific performance. As noted by the trial court in its decision, the arguments surrounding this motion arise from the parties' differing interpretations of the statute of frauds issue in *Gallagher I.*

{¶ 15} The statute of frauds issue relates to Gallagher's first claim, where he alleged that Cochran (himself or through his agent, Mackert) promised him that he would be repaid over time. Ohio's Statute of Frauds, codified as R.C. 1335.05, provides, in relevant part:

> No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person . . . or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon

which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

{¶ 16} Gallagher alleged that an oral contract existed between himself and Cochran involving Cochran giving Gallagher employment and an equity position with Barker Products or the potential new company. Appellees argued that the alleged oral contract violated the statute of frauds because (1) it purported to answer the debt of another (Barker Products), and (2) could not be completed within one year of its making.

{¶ 17} This court found these arguments to be meritless. The court first determined that the debt provision was not implicated because Gallagher did not allege that Cochran agreed to pay him directly and instead asserted that he was promised that he would be reimbursed through an equity stake in the company or employment. In addition, this court found that "[i]t is possible for an equity sharehold to be given to a person or to reach the required value in less than a year, therefore the statute of frauds is not implicated" and further found that "a period of employment can be completed within a year." *Gallagher I* at ¶ 38-39.

{¶ 18} Following the issuance of *Gallagher I*, Cochran moved this court for reconsideration, arguing in part that the court had erroneously concluded that an "indirect payment," in the form of employment or an equity stake, did not implicate the statute of frauds. The panel found no merit to Cochran's assertion and stated as follows:

In our opinion, we found that Cochran offered Gallagher an equity stake or employment in order for Gallagher to make his money back, but that Cochran did not agree to answer for Barker Products' debts. If Gallagher were unable to recoup the entirety of his debts through either employment or an equity share there is no suggestion that Cochran would be on the hook for the rest of the debt. According to Gallagher's claim, Cochran is not obligated to do anything more than grant him an equity share and employment. Further, this court is not saying that Gallagher has proven his claims.

{¶ 19} In his brief in opposition to the motion for reconsideration, Gallagher acknowledged that he was "not seeking that [a]ppellees answer for the debt of Barker [Products], but rather that Cochran promised that Gallagher would be repaid with an equity share over time through his employment . . . ."

{¶ 20} On remand, the trial court was bound by our legal determinations in *Gallagher I*. Under the law-of-the-case doctrine, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3-4 (1984).

{¶ 21} In its order striking Gallagher's jury demand, the trial court stated as follows:

Simply put, the Court of Appeals held that the Statute of Frauds did not apply because Plaintiff did not allege that Defendants agreed to pay Plaintiff directly the debt owed by the third party, but that the Plaintiff was promised an equity stake in the company or employment to reimburse him for his debts. To now allow the Plaintiff to seek monetary damages from the Defendants for the debt owed by a third party would be to ignore the Statute of Frauds, and the holding of the Court of Appeals. This Court is not inclined to do so.

Consequently, in the trial of this matter, the only damages that the Plaintiff can argue for is specific performance of either employment from the Defendants, or an equity stake in the Defendants' company.

**{¶ 22}** We agree with the trial court's application of *Gallagher I* and find that the trial court did not err in limiting Gallagher's remedy to specific performance. Gallagher's second assignment of error is therefore overruled.

**{¶ 23}** We now turn to Gallagher's first assignment of error and the question of whether he was entitled to a jury trial. We find that he was not. Where a plaintiff seeks primarily equitable relief with attendant and incidental money damages neither party is entitled to a trial by jury. *Tipp City v. Watson*, 2003-Ohio-4836, ¶ 17 (2d Dist.), citing *Pyromatics, Inc. v. Petruziello,* 7 Ohio App.3d 131, 134 (8th Dist. 1983), citing *Converse v. Hawkins*, 31 Ohio St. 209 (1877); *Rowland v. Entrekin*, 27 Ohio St. 47 (1875); and *Harden Chevrolet Co. v. Pickaway Grain Co.*, 92 Ohio Law Abs. 161 (Pickaway C.P. 1961). "A trial court possesses discretion to determine whether a certain matter is triable to a jury." *State ex rel. Gallagher v. Collier-Williams*, 2022-Ohio-1177, ¶ 18 (8th Dist.).

**{¶ 24}** Because the trial court correctly determined that the only relief available on Gallagher's claims was the equitable relief of specific performance, it did not err in striking Gallagher's demand for a jury trial and proceeding with a bench trial. Gallagher's first assignment of error is overruled.

## B. Motion to Dismiss pursuant to Civ.R. 41(B)(2)

{¶ 25} In his third assignment of error, Gallagher argues that the trial court's dismissal of the case under Civ.R. 41(B)(2) was against the manifest weight of the evidence and contrary to law.

{¶ 26} Civ.R. 41(B)(2) states:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

{¶ 27} This court has noted:

"Civ.R. 41(B)(2) allows a trial court to determine the facts by weighing the evidence and resolving any conflicts therein. *Whitestone Co.*, 2007-Ohio-233, 2007 WL 155299, at ¶ 13; *Sharaf*, 2003-Ohio-4825, 2003 WL 22100140, at ¶ 8. If, after evaluating the evidence, a trial court finds that the plaintiff has failed to meet her burden of proof, then the trial court may enter judgment in the defendant's favor. *Daugherty*, Franklin App. No. 98AP-1580, 1999 Ohio App. LEXIS 6457, 1999 WL 1267342. Therefore, even if the plaintiff has presented evidence on each element of her claims, a trial court may still order a dismissal if it finds that the plaintiff's evidence is not persuasive or credible enough to satisfy her burden of proof. *Tillman*, 2007-Ohio-2429, 2007 WL 1454781, at ¶ 11. An appellate court will not overturn a Civ.R. 41(B)(2) involuntary dismissal unless it is contrary to law or against the manifest weight of the evidence. *Whitestone Co.* at ¶ 13; *Sharaf*, ¶ 8."

*Am. Family Ins. Co. v. Johnson*, 2010-Ohio-1855, ¶ 9-10 (8th Dist.), quoting *Jarupan v. Hanna*, 2007-Ohio-5081, ¶ 9 (10th Dist.).

{¶ 28} At the conclusion of Gallagher's case, appellees moved for dismissal, arguing that Gallagher had failed to demonstrate that a contract had been formed between the parties. The court granted the motion and dismissed the case,

reasoning that Cochran made an offer to split 40 percent of the company between Dagley, the Wades, and Gallagher. Gallagher did not accept Cochran's original offer because he wanted instead to be a debt holder, which Cochran ultimately rejected. The court determined that an oral contract had not been formed and dismissed Gallagher's claims.

{¶ 29} "'A breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach.'" *All Star Land Title Agency, Inc. v. Surewin Invest., Inc.*, 2006-Ohio-5729, ¶ 19 (8th Dist.), quoting *Phillips v. Spitzer Chevrolet Co.*, 2006-Ohio-4701 (5th Dist.).

{¶ 30} In his brief, Gallagher asserts that he presented evidence of every element necessary to prove breach of contract. He argues that he memorialized the terms of the management in emails sent to Cochran, which he argues Cochran never challenged. He further testified that he accepted Cochran's offer and believed that he had an offer of employment and that he would continue to render services for Barker Products.

{¶ 31} The formation of a contract requires a bargain in which there is a manifestation of mutual assent, which "ordinarily takes the form of an offer or proposal by one party *followed by an acceptance by the other party* or parties." (Emphasis added.) *Harmon v. Philip Morris, Inc.*, 120 Ohio App.3d 187, 190 (8th

Dist. 1997), citing Restatement of the Law 2d, Contracts, § 22 and 71 (1981). "'[F]or there to be a proper offer and acceptance, parties to a negotiation must have a meeting of the minds.'" *Alliant Food Servs. v. Powers*, 2003-Ohio-4193, ¶ 26 (8th Dist.), quoting *Gall v. Trumbull Mem. Hosp.*, 2000 Ohio App. LEXIS 3053 (11th Dist. July 7, 2000). Parties entering into a contract "must have a distinct and common intention which is communicated by each party to the other." *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 87 Ohio App.3d 613 (8th Dist. 1993).

{¶ 32} The trial court determined that the terms set forth at the September 10 meeting did not create a contract. The record supports this assertion. Even in Gallagher's own testimony, he states that Cochran "rejected" his "offer" to be a debtor. He further characterizes this as a "proposal." Gallagher did not present competent, credible evidence to demonstrate that an offer had been accepted and that a contract had been formed in this matter.

{¶ 33} Gallagher further argues that he presented evidence to demonstrate his fourth claim for relief, successor liability, and that the court improperly dismissed his claim.

{¶ 34} Whether a corporation who purchased the assets of another corporation may be held liable for the contractual obligations of the seller corporation was analyzed by the Supreme Court of Ohio in *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344 (1993). In *Welco*, the Supreme Court of Ohio reiterated the well-established general rule of successor liability: the purchaser of a

corporation's assets is not liable for the debts and obligations of the seller corporation, unless one of the exceptions applies. *Id*. at 346-347. A successor corporation may be held liable when "(1) the buyer corporation expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Id*. at 347.

{¶ 35} The Court in *Welco* elaborated on the concepts of "mere continuation" and explained that the basis of this theory is the continuation of the corporate entity, not the business operation, after the transaction. Such would be the case when "one corporation sells its assets to another corporation with the same people owning both corporations. Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation. This is actually a reorganization." The *Welco* Court noted that this type of transaction is executed to escape liabilities of the predecessor corporation. Because the goal is to escape liability, inadequacy of consideration is one of the indicia of mere continuation. *Albright v. Varicon, L.L.C.*, 2014-Ohio-209, ¶ 21-24 (8th Dist.), citing *id*. at 350.

{¶ 36} Gallagher appears to argue in his brief that Cleveland Plating was a "mere continuation" of Barker Products. However, the only evidence that he points to in support of this assertion is his testimony that he received an email from Cleveland Plating using the same geographical address as Barker Products but that the company at that address had been Barker Products the day prior. Gallagher

stated that to the best of his knowledge, the doors at Barker Products never shut before it became Cleveland Plating and that he was "assuming" that it was the same entity. He acknowledged that he did not have any direct knowledge regarding the entity. The record reflects that Gallagher did not present competent, credible evidence to demonstrate successor liability.

{¶ 37} The trial court did not err in dismissing the case, and Gallagher's third assignment of error is overruled.

## C. Successor Liability

{¶ 38} In his fourth assignment of error, Gallagher argues that the trial court erred as a matter of law and/or abused its discretion in failing to address his fourth claim for relief despite this court's revival of his claim for successor liability.

{¶ 39} Gallagher does not present a separate argument in support of this assigned error but instead advises the court to "See above, assignment of error #3." The successor liability portion of his argument in support of the third assignment of error consists of one paragraph and cites just a few lines from the transcript. As we have already determined that Gallagher did not present competent, credible evidence in support of his successor-liability claim, we also overrule his fourth assignment of error.

## III. Conclusion

{¶ 40} The trial court did not err in granting appellees' motion to dismiss Gallagher's claims pursuant to Civ.R. 41(B)(2) or in striking Gallagher's jury demand

and limiting his remedy to specific performance.  The judgment of the trial court is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

MICHAEL JOHN RYAN, P.J., and
SEAN C. GALLAGHER, J., CONCUR

KEYWORDS
#113554 – Gallagher v. Cochran

Motion to strike jury demand; equitable relief; specific performance; statute of frauds; R.C. 1335.05; oral contract for employment; equity stake; dismiss; Civ.R. 41(B)(2); manifest weight of the evidence; competent, credible evidence; formation of contract; offer; acceptance; meeting of the minds; successor liability; mere continuation of seller corporation.

The trial court did not err in granting appellees' motion to dismiss appellant's claims pursuant to Civ.R. 41(B)(2) or in striking appellant's jury demand and limiting his remedy to specific performance.