[Cite as *Carpenter v. New Age Logistics, L.L.C.*, 2016-Ohio-281.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

JACK D. CARPENTER

    Appellant

    v.

NEW AGE LOGISTICS, LLC

    Appellee

C.A. No. 27689

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. CV 2013 11 5307

DECISION AND JOURNAL ENTRY

Dated: January 27, 2016

MOORE, Judge.

{¶1} Plaintiff-Appellant, Jack Carpenter, now appeals from the judgment of the Summit County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellee, New Age Logistics, LLC ("New Age"). This Court reverses.

I.

{¶2} Handl-It, Inc. ("Handl-It") was founded in 1992 and operated until March 13, 2013. Before ceasing its operations, Handl-It functioned as a public warehousing and manufacturing company. Mr. Carpenter acted as a consultant for Handl-It and routinely serviced its manufacturing equipment. At the time it ceased its operations, Handl-It allegedly owed Mr. Carpenter more than $20,000 for his services, which spanned from June 18, 2012, through March 10, 2013.

{¶3} New Age was founded in October 2012 by Garrett Peters, the son of one of Handl-It's four owners. Mr. Peters founded New Age for the purpose of supplying Handl-It with

a specific product that it required. When it became clear that Handl-It would be ceasing its operations, however, New Age agreed to buy certain assets and accounts from it pursuant to an asset purchase agreement. One of the assets that New Age purchased was Handl-It's manufacturing equipment. It is undisputed that New Age asked Mr. Carpenter to act as its consultant and to service the manufacturing equipment it purchased from Handl-It.

{¶4} While Mr. Carpenter serviced New Age's manufacturing equipment, New Age began making payments on past-due invoices that Mr. Carpenter had issued to Handl-It. According to Mr. Carpenter, he only agreed to service New Age's equipment because, after he threatened to withhold his services, New Age had agreed to pay the balance of the invoices. According to Mr. Peters, New Age agreed to make payments towards Handl-It's outstanding balance so that Mr. Carpenter would not withhold his services, but it never agreed to pay the entire outstanding balance. While New Age began making payments on the Handl-It invoices, Mr. Carpenter issued 6 new invoices directly to New Age for services he performed there from March 28, 2013, through August 8, 2013.

{¶5} Subsequently, Mr. Carpenter brought suit against New Age and Handl-It, seeking a money judgment on 31 separate invoices. With respect to New Age, Mr. Carpenter sought payment on the 6 invoices he had issued it ("the New Age invoices") for a total of $2,600.50, plus interest. With respect to Handl-It, Mr. Carpenter sought payment on 25 invoices that he had issued it ("the Handl-It invoices") for a total of $16,900, plus interest. Mr. Carpenter also alleged that New Age was jointly and severally liable for the money due on the Handl-It invoices under the theory of successor liability. Mr. Carpenter later voluntarily dismissed his case against Handl-It.

{¶6} Following discovery, New Age filed a motion for summary judgment with respect to the Handl-It invoices. New Age argued that it was entitled to summary judgment because it had neither expressly, nor impliedly agreed to assume Handl-It's obligation to Mr. Carpenter for the services that he had provided Handl-It. Mr. Carpenter filed a brief in opposition to the motion and argued that genuine issues of material fact remained with respect to the issue of successor liability. The trial court ultimately rejected Mr. Carpenter's arguments and granted New Age's motion for summary judgment.

{¶7} After the court granted New Age's motion, Mr. Carpenter moved for summary judgment against New Age for payment on the New Age invoices. New Age did not oppose the motion, and the trial court granted it. The court ordered New Age to pay Mr. Carpenter $2,600.50 so as to satisfy the New Age invoices.

{¶8} Mr. Carpenter now appeals from the court's judgment in favor of New Age on the Handl-It invoices and raises two assignments of error for our review. For ease of analysis, we combine his assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED BY GRANTING THE MOTION FOR SUMMARY JUDGMENT OF NEW AGE BASED ON ITS FINDING THAT NEW AGE DID NOT IMPLIEDLY ASSUME THE HANDL-IT INVOICES.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED BY GRANTING THE MOTION FOR SUMMARY JUDGMENT OF NEW AGE BASED ON ITS FINDING THAT NEW AGE DID NOT EXPRESSLY ASSUME THE HANDL-IT INVOICES.

{¶9} In his assignments of error, Mr. Carpenter argues that the trial court erred by granting New Age's motion for summary judgment. Specifically, he argues that genuine issues

of material fact remain as to whether New Age either expressly or impliedly assumed liability for the Handl-It invoices after it purchased Handl-It's manufacturing equipment. We agree.

**{¶10}** We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

**{¶11}** Pursuant to Civ.R. 56(C), summary judgment is proper only if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* at 293. If the moving party fulfills this burden, then the burden shifts to the nonmoving party to prove that a genuine issue of material fact exists. *Id.*

**{¶12}** "The well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993). "The Supreme Court of Ohio has identified four well recognized exceptions to the general rule barring successor liability." *Rondy & Co., Inc. v. Plastic Lumber Co.*, 9th Dist. Summit No. 25548, 2011-Ohio-5775, ¶ 9. It has held that

> [a] corporation that purchases the assets of another is not liable for the contractual liabilities of its predecessor corporation unless (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability.

*Welco* at syllabus, citing *Flaugher v. Cone Automatic Machine Co.*, 30 Ohio St.3d 60 (1987). This appeal only concerns the first exception to the general rule. As such, the issue is whether New Age either expressly or impliedly agreed to assume Handl-It's liability on the Handl-It invoices.

{¶13} New Age submitted two affidavits in support of its motion for summary judgment. The first was from Jerry Peters, the father of Garrett Peters and one of Handl-It's four owners. The second was from Garrett Peters, his son and the owner of New Age. In both of their affidavits, Jerry and Garrett Peters averred that Handl-It sold its manufacturing equipment to New Age at fair market value, as determined by an independent appraisal company. Garrett Peters averred that New Age asked Mr. Carpenter to service the purchased equipment, but that Mr. Carpenter "agreed to provide [his] services only if New Age paid for Handl-[I]t's past due invoices." He further averred that "[a]t that critical time for [New Age] * * * to keep its business open, [it] had no choice but to agree to pay approximately $6,500.00 of Handl-[I]t's past due invoices." In his deposition, Garrett Peters elaborated on the foregoing payment arrangement.

{¶14} Mr. Peters testified that, after New Age purchased Handl-It's manufacturing equipment, it began manufacturing the same products that Handl-It had manufactured. Although Mr. Peters had never personally met Mr. Carpenter, he knew that Mr. Carpenter acted as a consultant and serviceman for Handl-It. He testified that such consultants were "very hard to come by, so it was in [New Age's] interest to continue to do business with [Mr. Carpenter] * * *." He admitted, however, that money was an issue because Handl-It was indebted to Mr.

Carpenter and Mr. Carpenter said that he "would not do anymore work without getting some past-due invoices paid." According to Mr. Peters, New Age needed Mr. Carpenter, so it agreed to pay him "some money" in exchange for his continuing to service the equipment. He denied that New Age ever agreed to pay Mr. Carpenter the full amount that Handl-It owed. Instead, he testified that New Age agreed to pay "some portion" of the money and that he "approved * * * between four and seven hundred dollars a week to be paid to [Mr. Carpenter] in a sum of sixty-five hundred dollars or so." According to Mr. Peters, the parties never set a specific payment schedule or negotiated a specific sum of payment. He testified that New Age would simply send Mr. Carpenter a check each time he came to the facility because "he kind of demanded some money."

{¶15} Mr. Peters testified that, when New Age receives an invoice, the invoice is entered into its accounts payable system for payment. He agreed that, once an invoice has been entered into the system, it is New Age's intention to pay it. He further agreed that, without exception, the Handl-It invoices had all been stamped as having been entered into New Age's system. Nevertheless, he denied that New Age's decision to enter the Handl-It invoices into its system meant that it had assumed the responsibility to pay them. He suggested that the invoices might have been entered simply to have "some kind of record to pay."

{¶16} The remaining pieces of summary judgment evidence upon which New Age relied related to its actual purchase of Handl-It's manufacturing equipment. One piece of that evidence was the asset purchase agreement that the two entities signed on March 25, 2013. While the agreement provided that New Age would acquire Handl-It's assets subject to an Internal Revenue Service lien, it did not include any mention of a lien related to Mr. Carpenter. Indeed, in the Representations and Warranties clause of the agreement, Handl-It represented that

"[e]xcept for the Tax Lien, there are no other liens, encumbrances or other impediments which prevent [Handl-It] from conveying the assets free and clear."

{¶17} In opposition to summary judgment, Mr. Carpenter submitted his own affidavit. In it, he averred that New Age had asked him to provide it the same consulting services that he had previously provided to Handl-It, but, at that point, Handl-It owed him more than $20,000. Mr. Carpenter stated that he "threatened" to refuse his services if New Age did not agree to pay him the balance of Handl-It's debt. He further averred that, in response, "New Age promised to pay [him] the whole amount of the Handl-[I]t Obligation if [he] would agree to provide [his] * * * services to New Age." Mr. Carpenter stated that his consulting services were "very specialized" and that New Age "was in dire need of [his] services."

{¶18} Mr. Carpenter also attached to his brief in opposition copies of checks he received from New Age for payment on past-due invoices he had billed to Handl-It. The checks included payments on several invoices that predated the Handl-It invoices. All of the invoices were identified by number and letter, and each check from New Age included a notation, identifying the specific invoice to which it pertained. For instance, New Age issued Mr. Carpenter four checks on invoice 45bb, an invoice for work Mr. Carpenter performed for Handl-It during the week of April 21, 2012. The checks ranged from $500 to $620 in value and satisfied the entire amount due and owing on invoice 45bb.

{¶19} In total, New Age either completely or almost completely satisfied a sizeable portion of five invoices that predated the Handl-It invoices, but were nevertheless owed to Mr. Carpenter by Handl-It. New Age did so by issuing Mr. Carpenter 14 separate checks from March 6, 2013, to September 4, 2013. The checks totaled $7,340. Much like the Handl-It

invoices, all of the invoices to which the checks corresponded bore a stamp, signifying that New Age had entered the invoices into its accounts payable system.

{¶20} First, Mr. Carpenter argues that the trial court erred by granting New Age's motion for summary judgment because genuine issues of material fact remained as to whether New Age expressly agreed to assume Handl-It's liability on the Handl-It invoices. The trial court determined that New Age was entitled to summary judgment because Mr. Carpenter failed to detail the conditions under which New Age allegedly promised to assume liability on the Handl-It invoices. That is, the court found that Mr. Carpenter "never identifie[d] exactly what was said, who made the promise to pay him, when the promise was made, in what context the promise was made, [or whether] * * * there were any witnesses present, etc." In ruling on a motion for summary judgment, however, a court must view the facts of the case in the light most favorable to the non-moving party and resolve any doubt in favor of the non-moving party. *Viock*, 13 Ohio App.3d at 12. It is error for the court to weigh the quality of the evidence. *See Taylor v. Uhl*, 9th Dist. Lorain No. 13CA010441, 2014-Ohio-3090, ¶ 5, quoting *Harry London Candies, Inc. v. Bernie J. Kosar Greeting Card Co.*, 9th Dist. Summit No. 20655, 2002 WL 185305, *3 (Feb. 6, 2002).

{¶21} New Age satisfied its initial *Dresher* burden on the issue of its express assumption of liability. *See Dresher*, 75 Ohio St.3d at 292-93. Mr. Peters testified that New Age only agreed to pay Mr. Carpenter "some money" on the Handl-It invoices and never promised to pay the invoices in their entirety. Moreover, the asset purchase agreement between New Age and Handl-It evidenced that New Age purchased Handl-It's assets free from any "liens, encumbrances or * * * impediments" other than an Internal Revenue Tax lien. Thus, the burden shifted to Mr. Carpenter to demonstrate the existence of a genuine issue of material fact on the

issue of New Age's express assumption of liability. *See id.* at 293. Because the record reflects that Mr. Carpenter satisfied his reciprocal burden, we must conclude that the trial court erred when it awarded New Age summary judgment on that issue.

{¶22} In his affidavit, Mr. Carpenter averred that New Age was in "dire need" of his services and that he had threatened to withhold them if New Age did not agree to pay him "the balance of over $20,000" that Handl-It owed him. He further averred that, to secure his services, New Age had "promised to pay [him] the whole amount of the Handl-[I]t [invoices] * * *." Although Mr. Carpenter did not set forth the details surrounding that promise, the trial court was obligated to view his statement in a light most favorable to him and to resolve any doubt in his favor. *See Viock*, 13 Ohio App.3d at 12. This Court has held that a non-moving party may rely upon a self-serving affidavit to satisfy his reciprocal *Dresher* burden so long as the affidavit points to a genuine issue of material fact. *See Copley v. Westfield Group*, 9th Dist. Medina No. 10CA0054-M, 2011-Ohio-4708, ¶ 8. Mr. Carpenter's averment that New Age promised to pay him the full amount due and owing on the Handl-It invoices created a genuine issue of material fact on the issue of New Age's express assumption of liability. Thus, the trial court erred by awarding New Age summary judgment on that issue.

{¶23} Next, we consider Mr. Carpenter's argument that genuine issues of material fact remain as to whether New Age impliedly agreed to assume Handl-It's liability on the Handl-It invoices. "Implied assumption is also referred to as equitable assignment." *Albright v. Varicon, L.L.C.*, 8th Dist. Cuyahoga No. 99967, 2014-Ohio-209, ¶ 32. "An equitable assignment * * * requires no particular form[.] * * * 'It is accomplished where there is an intention on one side to assign and an intention on the other to accept, supported by a sufficient consideration and disclosing a present purpose to make an appropriation of a debt or fund.'" *Elbert v. West*, 9th

Dist. Lorain No. 3985, 1986 WL 9131, *1 (Aug. 20, 1986), quoting *Gen. Excavator Co. v. Judkins*, 128 Ohio St. 160 (1934), paragraph three of the syllabus. "The intent is to be ascertained from the language used, construed in light of the surrounding circumstances." *Elbert* at *1.

**{¶24}** As previously noted, the parties submitted competing affidavits. While Mr. Carpenter averred that New Age promised to pay him the full amount due and owing on the Handl-It invoices, Mr. Peters averred that New Age only agreed to pay "approximately $6,500.00 of Handl-[I]t's past due invoices." Mr. Peters also testified that New Age agreed to pay Mr. Carpenter "some money," but never promised the entire amount. He acknowledged that New Age had entered all of the Handl-It invoices into its accounts payable system, but denied that, by doing so, New Age had assumed responsibility for them. The trial court credited Mr. Peters' testimony and wrote that it was "not persuaded that the act of entering invoices into a company's account system is tantamount to agreeing to pay for the debt of another." It then entered summary judgment on behalf of New Age.

**{¶25}** Once again, "[i]n ruling on a motion for summary judgment the trial court is not permitted to weigh the evidence or choose among reasonable inferences." *Taylor*, 2014-Ohio-3090, at ¶ 5, quoting *Harry London Candies, Inc.*, 2002 WL 185305, at *3. It was not for the trial court here to decide whether one parties' evidence was more persuasive. The only issue before the court was whether, viewing the evidence in a light most favorable to Mr. Carpenter, there were genuine issues of material fact for trial. Because the record reflects that a genuine issue of material fact exists on the issue of implied assumption, we must conclude that the trial court erred by awarding summary judgment to New Age.

{¶26} Assuming without deciding that New Age satisfied its initial *Dresher* burden on the issue of implied assumption, the evidence that Mr. Carpenter presented in support of his reciprocal burden demonstrated a triable issue. Mr. Carpenter averred that, because of New Age's "dire need" for his specialized services, it promised to pay him the full amount due and owing on the Handl-It invoices. In support of his averment, he introduced copies of fourteen checks that New Age issued to him. The checks were sent to him on an almost weekly basis between March 6, 2013, and September 4, 2013, and totaled $7,430. The checks were designated as payment for particular invoices that Mr. Carpenter had sent to Handl-It, and all of those invoices were stamped as having been entered into New Age's accounts payable system. The Handl-It invoices were all likewise stamped, and Mr. Peters acknowledged that, once an invoice has been entered into New Age's system, it is New Age's intention to pay the invoice. There was no evidence of any written agreement wherein New Age only agreed to pay Mr. Carpenter a limited amount of money in exchange for his services. Moreover, in spite of Mr. Peters' averment that New Age only promised to pay Mr. Carpenter approximately $6,500 towards Handl-It's past-due invoices, the checks that Mr. Carpenter introduced into evidence showed that New Age had already paid him an amount in excess of $7,300.

{¶27} New Age argues that Mr. Carpenter's implied assumption claim should fail because there was no evidence of any bargained-for consideration on its part. *See Elbert*, 1986 WL 9131, at *1, quoting *Gen. Excavator Co.*, 128 Ohio St. 160 at paragraph three of the syllabus (equitable assignment must be supported by sufficient consideration). It argues that it did not stand to gain a benefit from satisfying Handl-It's debt to Mr. Carpenter because Handl-It had already received the benefit of that bargain. There was evidence, however, that New Age was in "dire need" of Mr. Carpenter's services. Mr. Peters himself testified that the services Mr.

Carpenter provided were "very hard to come by" and that "[a]t that critical time" New Age needed him. Because Mr. Carpenter made his services contingent upon New Age's payment of Handl-It's past due invoices, there was evidence that New Age received a benefit from its payment of the invoices. Specifically, it received Mr. Carpenter's unique services at a time when it was in "dire need" of them.

{¶28} Mr. Carpenter set forth evidence which, when viewed in a light most favorable to him, demonstrated a genuine issue of material fact for trial on the issue of implied assumption. *See Albright*, 2014-Ohio-209, at ¶ 39-40 (genuine issue as to implied assumption of lease where entity that acquired another's assets made monthly payments on the selling entity's 5-year lease for a period in excess of 20 months). Further, as discussed above, he demonstrated a genuine issue of material fact for trial on the issue of express assumption. As such, we must conclude that the trial court erred by granting New Age's motion for summary judgment. For the reasons outlined above, Mr. Carpenter's assignments of error are sustained.

III.

{¶29} Mr. Carpenter's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CARLA MOORE
FOR THE COURT

SCHAFER, J.
CONCURS.

HENSAL, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶30} Mr. Carpenter brought suit against New Age under the theory that it either expressly or impliedly assumed Handl-It's debts for his maintenance and repair services. While I agree that this matter should be remanded on the issue of implied assumption, I cannot agree that genuine issues of material fact remain on the issue of express assumption. Consequently, I dissent with respect to that portion of the majority's opinion.

{¶31} In moving for summary judgment on Mr. Carpenter's successor liability claim, New Age set forth evidence that it purchased Handl-It's manufacturing equipment by way of an

asset purchase agreement. The agreement did not provide that the purchase was subject to a lien related to Mr. Carpenter. To the contrary, it provided that, "[e]xcept for [a] Tax Lien, there [were] no other liens, encumbrances or other impediments which prevent[ed] [Handl-It] from conveying the assets free and clear." Thus, there was no evidence that, as a condition of purchasing Handl-It's assets, New Age ever expressly promised Handl-It that it would satisfy Handl-It's debt to Mr. Carpenter. Further, no other evidence of communications or agreements between New Age and Handl-It in which they referenced obligations owed to Mr. Carpenter were proffered or alleged.

{¶32} The only express statement that Mr. Carpenter set forth in support of his express assumption theory was an oral promise that New Age allegedly made to him when it asked him to service its newly purchased manufacturing equipment. According to Mr. Carpenter's affidavit, "New Age promised to pay [him] the whole amount of the Handl-[I]t Obligation if [he] would agree to provide [his] * * * services to New Age." Handl-It was not a party to that promise, however, because it (1) only involved New Age and Mr. Carpenter, and (2) occurred after New Age had already purchased Handl-It's equipment. Mr. Carpenter did not set forth evidence that New Age made the foregoing promise surrounding its acquisition Handl-It's assets. Accordingly, while the promise to Mr. Carpenter might have given rise to a contractual or quasi-contractual arrangement between New Age and Mr. Carpenter, it was not evidence in support of his express assumption claim. Because Mr. Carpenter did not present any other evidence in support of that claim, I would conclude that he failed to satisfy his reciprocal *Dresher* burden and that New Age was entitled to summary judgment on his express assumption claim. To the extent the majority concludes otherwise, I respectfully dissent.

APPEARANCES:

JARED M. HOOVER, Attorney at Law, for Appellant.

J. KURT DENKEWALTER, Attorney at Law, for Appellee.